(889 P.2d 1151)
No. 71,297

VICKIE RUTH HELMS, *Claimant*, v. TOLLIE FREIGHTWAYS, INC., *Respondent*, and INSURANCE COMPANY OF NORTH AMERICA, *Insurance Carrier/Appellee*, and TRUCK INSURANCE EXCHANGE, *Insurance Carrier/Appellant*, and KANSAS WORKERS COMPENSATION FUND.

Opinion filed February 17, 1995.

*Julie A. N. Sample* and *Kip A. Kubin*, of Payne & Jones, Chartered, of Overland Park, for appellant Truck Insurance Exchange.

*Marcia Sandgren*, of Law Offices of Rex R. Redhair, of Kansas City, Missouri, for appellee Insurance Company of North America.

Before BRISCOE, C.J., GERNON, J., and ROBERT H. MILLER, Chief Justice Retired, assigned.

MILLER, C.J. Retired: Truck Insurance Exchange (Truck) appeals from the decision of the Workers Compensation Board (Board) holding that Truck is liable for Vickie Ruth Helms' compensation for her work-related injury. There is no dispute that Helms sustained a work-related injury, nor is there any dispute as to the amount of compensation awarded. The sole dispute here is between the insurance carriers, Truck and Insurance Company of North America (ICNA), as to which one is liable. The Administrative Law Judge (ALJ) held ICNA liable. The Board reversed that portion of the ALJ's decision and held Truck liable. This appeal followed. Helms did not appear at oral argument, nor was a brief filed in her behalf.

The background facts are as follows: Helms, while employed at Tollie Freightways, Inc., (Tollie) severely injured her wrist in a work-related accident in February 1988. Approximately three years later, she still had not returned to work due to the injury, and she continued to receive daily physical therapy on her wrist. She was involved in a car accident and injured her back in January 1991 while she was on her way home from a daily therapy session. That injury was held to be work-related.

Truck was the insurance carrier for Tollie in 1988, at the time of the wrist accident. Helms' claim for that injury has now been settled. Tollie changed insurance carriers in April 1990, and ICNA was its insurance carrier at the time of the back injury in 1991. We are concerned here only with the back injury. Each of the insurance carriers claim that the other was on the risk and is, therefore, liable to pay compensation to Helms for the back injury.

Truck raises two issues. It argues: (1) The Board does not have jurisdiction to determine which of two insurance carriers had coverage for the 1991 accident; and (2) there was insufficient evidence to support the Board's finding that the 1991 accident was a direct, proximate consequence of the 1988 accident.

This court's review of an action of the Board is limited to questions of law. K.S.A. 44-556(a). When determining a question of law, an appellate court is not bound by the decision of the court

below. *Memorial Hospital Ass'n, Inc. v. Knutson*, 239 Kan. 663, 668, 722 P.2d 1093 (1986).

The procedural avenues for review of workers compensation awards were changed in 1993. The initial hearing is and continues to be before an ALJ, who enters or denies an award. Under the pre-1993 law, any party could then file an application for review by the Director, but such a review was not a prerequisite to judicial review. K.S.A. 1992 Supp. 44-551(b). Also, any party could request a review by the district court on questions of both law and fact. K.S.A. 1992 Supp. 44-556(a).

Since the legislative changes enacted in 1993, the ALJ's decision is, upon request, subject to review by the Board, and review by the Board is a prerequisite to judicial review. K.S.A. 44-551(b)(1). The Board may review questions of both law and fact, K.S.A. 44-555b(a), and its decisions are appealable directly to the Court of Appeals, which is limited to reviewing questions of law. K.S.A. 44-556(a).

K.S.A. 44-551(b)(1) provides in pertinent part:

"All acts, findings, awards, decisions, rulings or modifications of findings or awards made by an administrative law judge shall be subject to review by the board upon written request of any interested party . . . . Review by the board shall be a prerequisite to judicial review as provided for in K.S.A. 44-556 and amendments thereto. On any such review, the board shall have *authority to grant or refuse compensation, or to increase or diminish any award for compensation or to remand any matter to the administrative law judge* for further proceedings." (Emphasis added.)

K.S.A. 44-555b(a) provides:

"The board shall have exclusive jurisdiction to review *all decisions, findings, orders and awards of compensation of administrative law judges* under the workers compensation act. The review by the board shall be upon questions of law and fact as presented and shown by a transcript of the evidence and the proceedings as presented, had and introduced before the administrative law judge." (Emphasis added.)

K.S.A. 44-556 provides for judicial review of actions of the board:

"(a) Any action of the board pursuant to the workers compensation act, other than the disposition of appeals of preliminary orders or awards under K.S.A. 44-534a and amendments thereto, shall be subject to review in accordance with

the act for judicial review and civil enforcement of agency actions by appeal directly to the court of appeals. Any party may appeal from a final order of the board by filing an appeal with the court of appeals within 30 days of the date of the final order. Such review shall be upon questions of law."

K.S.A. 1992 Supp. 44-551(b)(1), in effect prior to the 1993 amendments, read:

"All acts, findings, awards, decisions, rulings or modifications of findings or awards made by an administrative law judge, shall be subject to review and approval by the director upon written request of any interested party within 10 days and if no such request is made, then the director shall approve such actions, findings, awards, decisions, or modifications of findings or awards of the administrative law judge. The filing of such a request for review shall not be a prerequisite to judicial review as provided for in K.S.A. 44-556 and amendments thereto."

K.S.A. 1992 Supp. 44-556 provided the avenue for judicial review. It read:

"(a) Any action of the director pursuant to the workers compensation act shall be subject to review in accordance with the act for judicial review and civil enforcement of agency actions. Such review shall be upon questions of law and fact as presented and shown by a transcript of the evidence and proceedings as presented, had and introduced before the director. The venue of the action shall be the county where the action arose . . . ."

The Act for Judicial Review and Civil Enforcement of Agency Actions, K.S.A. 77-601 *et seq.*, sets forth the procedural rules for appeals to the courts from the action of state agencies. With reference to workers compensation actions, the Act provides:

"Judicial review of disputed issues of fact shall be confined to the agency record for judicial review as supplemented by additional evidence taken pursuant to this act, except that review of:

(a) Orders of the director of workers' compensation under the workmen's compensation act shall be in accordance with K.S.A. 44-556 and amendments thereto." K.S.A. 1994 Supp. 77-618.

Finally, K.S.A. 77-623 provides: "Decisions on petitions for judicial review of agency action are reviewable by the appellate courts as in other civil cases."

K.S.A. 44-532 requires employers who are under the Workers Compensation Act to have either insurance, a self insured plan, or be covered by a group-funded workers compensation pool. Insurance carriers are mentioned throughout the Workers Com-

pensation Act. See K.S.A. 44-512a(a), K.S.A. 44-528(a), K.S.A. 44-532, K.S.A. 44-534, and K.S.A. 44-534a. Several sections of the Act deal specifically with insurance carriers. See K.S.A. 44-559, K.S.A. 44-559a, K.S.A. 44-561, K.S.A. 44-562, and K.S.A. 44-563. Insurance carriers may initiate the hearing process. K.S.A. 44-534. When an insurance carrier is present, it, like the employer and the claimant, is a party to the action and may appeal, as Truck has done in the case before us.

An award by an ALJ must be in writing, K.S.A. 44-525, and must determine not only whether compensation is or is not due and the amount thereof, but must name the parties—the claimant, the employer, and the insurance carrier, if any. Thus, the ALJ must decide whether there is an insurance carrier and, in the case of multiple insurers, which is on the risk. One of the pretrial questions to be answered in every workers compensation case is: "Did the respondent have an insurance carrier on the date of the alleged accident? What is the name of the insurance company?" K.A.R. 51-3-8. If the matter is not agreed upon, it then becomes an issue for determination by the ALJ.

When review of the ALJ's award is before the Board, does the Board have authority to make changes in the ALJ's findings as to the name of the insurance carrier? We think it does. Truck would have us construe K.S.A. 44-551(b)(1) strictly and limit the Board to "grant or refuse compensation, or to increase or diminish any award for compensation or to remand any matter to the administrative law judge for further proceedings."

Under our former law, the Director had broad discretion to review the awards of administrative law judges. The statute provided: "All acts, findings, awards, decisions, rulings or modifications of findings or awards made by an administrative law judge, shall be subject to review and approval by the director."

Our present statutes, K.S.A. 44-551(b)(1) and 44-555b(a), combine the language that previously governed the scope of the Director's review and the scope of the district court's review. K.S.A. 44-555b(a) authorizes the Board "to review all decisions, findings, orders and awards of compensation of administrative law judges." That review is upon "questions of law and fact." It is only after

review by the Board that recourse may be taken to the courts. K.S.A. 44-551(b)(1). We have not been cited, nor have we found, any case law examining or setting forth the authority of the Director under our prior statutes. Review and approval by the Director and review by the district court have both been deleted from the Act. We conclude that it was the intent of the legislature that the Director, under prior statutes, and now the Board, under our current statutes, have the authority to review and to substitute his, her, or its judgment for the decisions of the administrative law judges. The Board has, and should have, the authority to correct any errors it may find in the decision of the administrative law judges.

Truck relies on a line of cases, all under the former statutes, holding that the workers compensation division will not determine relative liabilities between insurance carriers. The most recent of these is *American States Ins. Co. v. Hanover Ins. Co.*, 14 Kan. App. 2d 492, 794 P.2d 662 (1990). The court there reviewed many of the older cases and repeatedly stated the general rule that "[u]nless specifically allowed by statute, insurance companies may not litigate in the workers compensation division their respective liability for an award if the employee's interests are not at issue." 14 Kan. App. 2d at 498.

The first case discussed in *American States* is *Attebery v. Griffin Construction Co.*, 181 Kan. 450, 460, 312 P.2d 598 (1957), where the court stated the rule that an insurance carrier may not draw in another respondent (employer) and its insurance carrier and litigate rights not relative to the obligation of the appellant insurance carrier on its own policy to its insured (an employer) or the claimant, but its rights against the other insurance carrier. Rather, the appropriate procedure was said to be an individual civil action for indemnity and subrogation between the insurance companies. In *Attebery*, however, the second employer and its insurance carrier had been dismissed from the case and were not before the workers compensation examiner or the court.

Next, the court in *American States* discussed *Atwell v. Maxwell Bridge Co.*, 196 Kan. 219, 409 P.2d 994 (1966), where the court held that since the Act expressly allows a general contractor to

implead a subcontractor, those employers' insurance carriers may litigate their respective liabilities in the workers compensation division without violating the *Attebery* rule.

Another case discussed in *American States* is *Hobelman v. Krebs Construction Co.*, 188 Kan. 825, 366 P.2d 270 (1961). There, the court held that where a loaned employee is injured and both employers retain control of the employee, the employers are jointly and severally liable for the workers compensation award. The degrees of liability between the employers, however, will not be decided in the workers compensation case. 188 Kan. at 830-31.

The last case discussed in *American States* was *Clouston v. Board of Johnson County Comm'rs*, 11 Kan. App. 2d 112, 715 P.2d 29 (1986), where the court initially determined whether either of two named employer respondents was an actual employer. This court in *American States* reasoned that this did not violate the general rule against insurance companies litigating their respective liability in the workers compensation division because in *Clouston*, both employers disclaimed liability and it was "theoretically conceivable that both could be correct and claimant's award would have to be reversed." 14 Kan. App. 2d at 499.

Finally, in *American States*, this court held that where one of two possible employers admits that it is the employer, the workers compensation division did not have jurisdiction to determine the relative liabilities between the insurance carriers of the two employers; the proper procedure was an independent action between the two carriers. 14 Kan. App. 2d at 500.

Three other cases should be mentioned: *Kuhn v. Grant County*, 201 Kan. 163, 439 P.2d 155 (1968); *Justice v. Continental Can Co.*, 174 Kan. 539, 257 P.2d 564 (1953); and *Employers' Liability Assurance Corp. v. Matlock*, 151 Kan. 293, 98 P.2d 456 (1940).

In *Kuhn*, claimant twice injured his back while working for the same employer, but, before the second injury occurred, the employer had changed to a different insurance carrier. The separate claims were consolidated. The examiner determined that both carriers were equally liable. Upon review, the Director found only one carrier liable for both injuries, and the district court re-

manded the proceedings for further findings as to each carrier's liability. The Supreme Court held that the district court had no authority to remand. Addressing the issue of the allocation of liability, the court discussed *Attebery* and *Hobelman* and then fashioned a remedy: Both carriers should be held jointly and severally liable, leaving them to litigate their disputes with each other in an independent action. 201 Kan. at 168-72. The court reached this decision based upon the district court's finding that the claimant's disability resulted from the combined effects of the two injuries. 201 Kan. at 170. This solution is not helpful here because the Board found that Helms' wrist injury did not contribute to the disability resulting from her back injury.

In *Justice*, claimant injured his right eye while his employer was insured by one insurance carrier and then injured his left eye while the employer was insured by another. Two separate claims were filed. Separate awards were made. Separate appeals were filed, but the appeal on the claim for injury to the right eye was later settled and dismissed. Thus, the case before the Supreme Court was for injury to the left eye against the insurance carrier that provided insurance coverage when that accident occurred. The appellant insurance carrier urged the court to fix the liabilities of the two insurance companies. The court refused the request for the reason that the other insurance carrier was not a party to the left eye injury case and was not before the court. Here, both carriers are present and are represented by counsel.

*Matlock* was decided before *Attebery*. The issue in *Matlock* was whether an insurance carrier may maintain an individual civil action to determine its liability on a workers compensation policy that it claimed was fraudulently procured, before the carrier had exhausted all remedies provided in the Workers Compensation Act. The court held that if an insurance carrier may be made a party to the original application for compensation, then all issues pertaining to its liability for compensation are within the jurisdiction of the workers compensation commissioner to hear and determine. The court held that the commissioner erred in ruling that he could not pass on each and every issue of the case pertaining to liability. Finally, the court stated that insurance carriers

may not maintain an independent action until all remedies found in the Act have been exhausted.

We hold that under the circumstances of this case, the ALJ had jurisdiction to determine which of the two insurance carriers before him had coverage of the 1991 accident and that the Board had jurisdiction to review the award of the ALJ and to correct any errors it found therein.

Truck's second argument is that the Board erred in determining that Helms' back injury was a direct consequence of her wrist injury. It contends that the back injury is a separate and distinct second injury. ICNA disagrees, arguing that the back injury can be traced to the primary (wrist) injury and that the wrist injury was the original injury which set the causation ball rolling.

Both the ALJ and the Board relied upon *Taylor v. Centex Construction Co.*, 191 Kan. 130, 379 P.2d 217 (1963), in finding that Helms' back injury is compensable. *Taylor* holds: "Under the workmen's compensation act securing medical treatment was in the [course] of claimant's employment with respondent and the trip to and from the doctor's office arose out of the nature, conditions, obligations or incidents of his employment." 191 Kan. 130, Syl. ¶ 1. Neither carrier disputes that Helms' back injury is compensable under *Taylor*.

The ALJ, in finding that the back injury was a new injury, proceeded under the theory of *Stockman v. Goodyear Tire & Rubber Co.*, 211 Kan. 260, 505 P.2d 697 (1973). *Stockman* holds that any natural consequence flowing from a compensable injury is also compensable. However, the court said:

"The rule . . . is limited to the results of one accidental injury. The rule was not intended to apply to a new and separate accidental injury such as occurred in the instant case. The rule . . . would apply to a situation where a claimant's disability gradually increased from a primary accidental injury, but not when the increased disability resulted from a new and separate accident." 211 Kan. at 263.

The Board reversed that finding and found that Helms' back injury is "directly related and arises from [her] wrist injury." The Board relied on *Roberts v. Krupka*, 246 Kan. 433, 790 P.2d 422 (1990), where the court held that any additional injury arising from medical malpractice in the treatment of a compensable in-

jury is a consequence of the primary injury and compensable under the Act. The Board noted that in *Roberts*, the court said: "The on-the-job injury was the cause of plaintiff being exposed to the risk of malpractice." 246 Kan. at 441. Relying on this statement, the Board reasoned that it was Helms' on-the-job wrist injury that caused her to be exposed to the risk of a car accident. The Board, therefore, equates the risk of malpractice in treating the original injury with the risk of a vehicular accident when traveling to or from the physician's office. We hold that this stretches the *Roberts* doctrine too far.

Kansas cases have frequently cited and relied on Larson's treatise on workers compensation law. Larson notes that several other jurisdictions have faced situations similar to the one at hand and that there are three possible solutions to the problem: (1) Hold the first insurer liable for any subsequent reinjury; (2) apportion liability between the carriers; and (3) the solution that in most instances will provide the highest level of benefits for the claimant, assign liability to the carrier on the risk at the time of the causation of the last injury, *i.e.*, "the carrier at the time of the 'last injurious exposure.'" 4 Larson's Workmen's Compensation Law § 95.12, pp. 17-117-21 (1994).

Larson goes on to state: "The 'last injurious exposure' rule in successive-injury cases places full liability upon the carrier covering the risk at the time of the most recent injury that bears a causal relation to the disability." 4 Larson's § 95.20, p. 17-121. "When an employee sustains a subsequent industrial injury which is found to be a 'new' injury, the insurer at risk at the time of the second injury is liable for all of claimant's benefits." 4 Larson's § 95.21, p. 17-126.

In its order, the Board found:

"The evidence presented fails to establish that claimant's previous injury caused her to lose access to the open labor market or affected her ability to earn comparable wages. Claimant testified that her hand surgeon, Dr. Harris, had advised her that she could return to over-the-road driving if she had not injured her back. Further there is no credit [*sic*] as the evidence fails to establish a contribution between the wrist injury and back injuries, and there are no weeks of overlapping permanent partial disability benefits.

. . . .

"The Appeals Board finds that claimant's preexisting wrist injury had no bearing on the injury claimant received to her neck and low back in the vehicle accident of January 25, 1991. Further, the evidence fails to establish that claimant's resulting disability was in any way contributed to by preexisting impairment."

Thus, the Board's finding is that Helms' back injury bears the total causal relationship to her present disability. The back injury was a new and wholly unrelated injury. Applying the "last injurious exposure" rule and *Stockman* to this finding, ICNA was the carrier at risk when Helms injured her back and, therefore, is the carrier liable for her compensation.

The Board also found that to hold ICNA liable would result in holding a carrier liable for payment of benefits to a worker for which it has not received premiums. We find nothing in the record to indicate whether Tollie was paying premiums on Helms at the time of her back injury.

The judgment is reversed.