(154 P.3d 1114)
No. 96,411

WAUNITA SMITH, *Appellee/Claimant*, v. ROSSVILLE VALLEY MANOR/CORPORATE RESOURCE MANAGEMENT, INC., *Appellant/Respondent*, and LEGION INSURANCE COMPANY/THE KANSAS GUARANTEE INSURANCE ASSOCIATION, *Appellant/Insurance Carrier*, and LIBERTY MUTUAL INSURANCE COMPANY, *Appellee/Insurance Carrier*, and KANSAS WORKERS COMPENSATION FUND, *Appellee*.

Opinion filed month March 30, 2007.

*J. Scott Gordon*, of Long, Luder & Gordon, P.A., of Overland Park, for appellants.

*Roger D. Fincher*, of Bryan, Lykins, Hejtmanek & Fincher, P.A., of Topeka, for appellee Waunita Smith.

*Lynn Curtis*, of Law Offices of Stephanie Warmund, of Kansas City, for appellee Liberty Mutual Insurance Company.

Before CAPLINGER, P.J., HILL and BUSER, JJ.

CAPLINGER, J.: Respondent Rossville Valley Manor/Corporate Resource Management, Inc. (Manor) and Legion Insurance Company/Kansas Guarantee Insurance Association (Legion) appeal the Workers Compensation Board's (Board) order charging Legion

with payment of claimant Waunita Smith's workers compensation award. Legion argues Liberty Mutual Insurance Company (Liberty) is liable for payment of the award under the "last injurious exposure rule".

Applying this rule, we find substantial competent evidence supports the Board's conclusion that the claimant's final work injury caused only a temporary aggravation of the claimant's condition, and did not affect her permanent work disability. We thus affirm the Board's decision that Legion, the insurance carrier at the time of the claimant's earlier and primary work-related injury, is responsible for payment of the claimant's award.

*Factual and procedural background*

While employed by Manor, the claimant was injured in work-related accidents on April 20, 2001, June 14, 2001, and January 3, 2002. After the April 2001 injury, the claimant missed work for 5-6 weeks and returned to work with light duty restrictions. When the claimant again injured her back in June 2001, her back pain temporarily increased but eventually returned to the level of pain experienced after the April injury.

On July 19, 2001, the claimant filed an application for workers compensation for the April 2001 and June 2001 injuries. In October, following an aggravation of her condition during physical therapy, the claimant visited Dr. Amundson, who ultimately recommended surgery. The claimant immediately scheduled surgery, but the surgery was postponed by Dr. Amundson's office. Thereafter, a nurse case manager for Legion cancelled the surgery.

Despite her claim for workers compensation, the claimant continued to work at Manor with light duty restrictions. On January 1, 2002, Manor changed insurance carriers from Legion to Liberty. After the January 3, 2002, accident, the claimant was placed on indefinite medical leave. The claimant filed another application for workers compensation on January 5, 2002.

The workers compensation claims were consolidated, and the administrative law judge (ALJ) held a preliminary hearing on February 20, 2002. The ALJ refused to order temporary total disability compensation until further treatment was attempted, but author-

ized the claimant to visit Dr. Amundson and ordered Legion to pay for any recommended treatment. Legion attempted to appeal the preliminary hearing order, arguing that Liberty was the insurance carrier at the time of the January 3, 2002, injury, but the Board dismissed the appeal.

The claimant visited Dr. Amundson again on April 3, 2002. Dr. Amundson continued the claimant's medical leave from Manor. Ultimately, Dr. Amundson conducted two surgeries, which resulted in only limited success. After the surgeries, Dr. Amundson believed the claimant had reached the maximum level of medical improvement and authorized the claimant to return to work with restrictions. The claimant approached Manor, seeking to return to work, but Manor informed the claimant that she no longer qualified for a position.

On September 15, 2005, the ALJ conducted a full evidentiary hearing, after which the ALJ entered an award in favor of the claimant for 31.14 weeks of temporary total compensation at $366.93 per week and 245.3 weeks of permanent partial general bodily disability at $366.93 per week. The award was capped at $100,000. The amount which was due at the time of the award was $43,349.11, minus any amount paid by the insurance carriers. The ALJ ordered any remaining sum to be paid in a lump sum award. The remaining $56,650.89 owed to the claimant would be paid over the following 154.39 weeks at a rate of $366.93 per week. The award was to be paid by Manor through its insurance carrier, Legion.

Manor and Legion appealed the ALJ's order to the Board, which essentially affirmed the ALJ's award but ordered $93,882.71 to be paid in a lump sum and the remaining $6,117.29 to be paid at a rate of $366.93 per week.

In this appeal, none of the parties challenge the compensation awarded to the claimant. The only question presented is which insurer should pay the award. Because Liberty was the insurer of Manor after January 1, 2002, Legion contends the last injurious exposure rule imposes responsibility for the award on Liberty.

*Standard of review*

Appellate review of an agency decision regarding workers compensation is limited to questions of law. *Surls v. Saginaw Quarries,*

*Inc.*, 27 Kan. App. 2d 90, 92, 998 P.2d 514 (2000). To the extent Legion asks this court to establish the scope of the last injurious exposure rule, the issue on appeal involves a question of law over which this court possesses unlimited review. See *Johnson v. Brooks Plumbing*, 281 Kan. 1212, 1213, 135 P.3d 1203 (2006). To the extent Legion challenges the applicability of the rule to the circumstances of this case, the issue involves a question of fact. Appellate review of questions of fact in a workers compensation case is limited to whether the Board's findings are supported by substantial competent evidence. *Mahan v. Clarkson Constr. Co.*, 36 Kan. App. 2d 317, 318, 138 P.3d 790, *rev. denied* 282 Kan. ___ (2006).

### Last injurious exposure rule

The last injurious exposure rule was first applied by this court in *Helms v. Tollie Freightways, Inc.*, 20 Kan. App. 2d 548, 557, 889 P.2d 1151 (1995). There, the claimant suffered a wrist injury at work. Subsequently, the claimant was involved in an accident while on her way home from physical therapy for the wrist injury, resulting in a back injury which also was deemed to be work-related. The claimant's employer was insured by one insurer at the time of the wrist injury and another insurer at the time of the back injury. 20 Kan. App. 2d at 549.

The *Helms* court initially determined that although the dispute before the court concerned which insurance company was responsible for compensating the claimant, the dispute was properly raised in the workers compensation proceeding under the circumstances of the case. The *Helms* court rejected the Board's determination that the back injury was a natural consequence of the earlier compensable wrist injury; instead, the court viewed the back injury as an independent, compensable injury. Because the employer had changed insurance carriers between the injuries to the claimant, this court was required to allocate responsibility between the insurance carriers, ultimately adopting the last injurious exposure rule. 20 Kan. App. 2d at 556-57.

" 'The "last injurious exposure" rule in successive-injury cases places full liability upon the carrier covering the risk at the time of the most recent injury that bears a causal relation to the disability.' [Citation omitted.] 'When an employee sustains

a subsequent industrial injury which is found to be a "new" injury, the insurer at risk at the time of the second injury is liable for all of claimant's benefits.' " 20 Kan. App. 2d at 557 (quoting 4 Larson's Workmen's Compensation Law §§ 95.12 and 95.21, pp. 17-177-21, 17-126).

Because the back injury ultimately was the cause of Helm's work disability, this court applied the last injurious exposure rule to allocate responsibility for the claimant's disability to the insurance carrier at the time of the auto accident. 20 Kan. App. 2d at 558.

Despite the seemingly broad language of the rule adopted in *Helms*, the scope of the last injurious exposure rule was further defined in *Surls*, 27 Kan. App. 2d at 95-96. In *Surls*, the claimant injured his neck, back, shoulder, arm, and leg while working for one company and, following treatment, returned to work for the company with work restrictions. After working for about 2 months, the claimant was transferred to another company with a different insurance carrier. While working for this second company, the claimant again injured his neck, back, shoulder, arm, and leg. Based upon the testimony of the claimant's treating physician, the Board awarded the claimant an 8.75% functional impairment rating and an 83.5% permanent partial general disability rating against the first employer. The Board awarded an additional 3% functional impairment rating against the second employer.

On appeal, the insurance carrier for the first company argued the Board misapplied the last injurious exposure rule. This court affirmed the Board, distinguishing "disability" from "functional impairment" for purposes of applying the last injurious exposure rule. Noting that substantial competent evidence established the second injury had not affected the claimant's work disability, only the claimant's functional impairment rating, this court reasoned the first company and its insurance carrier were in exactly the same position they would have been in if the second company had not accepted the transfer of the claimant with his work restrictions. 27 Kan. App. 2d at 96.

Consequently, under the last injurious exposure rule, a successive injury is relevant only to the extent it affects an employee's work disability rating. In other words, if a primary injury establishes an employee's work disability and a subsequent injury does not

increase the work disability, the ultimate disability is not causally related to the latter injury, and the insurance carrier at the time of the primary injury is responsible for compensation.

Whether successive injuries are merely the direct natural consequences of a primary injury or whether such injuries constitute independent and distinct injuries contributing to a work disability is a question of fact. See *Wietharn v. Safeway Stores, Inc.*, 16 Kan. App. 2d 188, 195-96, 820 P.2d 719, *rev. denied* 250 Kan. 808 (1991). In this case, the ALJ and the Board both found, for purposes of determining the claimant's work disability, the April 2001 and June 2001 injuries established the claimant's impairment. The successive injury in January 2002 did not affect the claimant's impairment. In challenging these findings, Legion bears the burden of establishing the invalidity of the Board's action. See *Foos v. Terminix*, 277 Kan. 687, 693, 89 P.3d 546 (2004).

Having reviewed the record in its entirety, the Board determined the claimant's January 3, 2002, injury caused only a temporary aggravation of the claimant's condition and did not affect her permanent work disability for purposes of the last injurious exposure rule. When reviewing a factual finding in a workers compensation case, this court is limited to determining whether the findings are supported by substantial competent evidence. Substantial competent evidence in the workers compensation context is evidence possessing substance and relevant consequence and proving a basis from which the legal issues may reasonably be resolved. We view any disputed evidence in a light most favorable to the prevailing party, including reasonable inferences drawn therefrom, and we do not weigh the evidence or assess the credibility of witnesses. *Mahan*, 36 Kan. App. 2d at 319.

The record supports the Board's factual findings. The parties do not dispute that the claimant suffered severe low back strain and suspected disc injury following the April 20, 2001, injury. Physical therapy for the injury increased, rather than decreased, the pain. A subsequent magnetic resonance imaging exam (MRI) indicated three bulging discs but no interference with the nerves. The treating physician ultimately released the claimant to return to work with significant restrictions.

After the June 14, 2001, injury, the pain symptoms initially increased significantly but eventually subsided to the level of pain experienced after the April injury but before the June injury. Another MRI revealed some nerve damage caused by a right-sided disc protrusion. The treating physician allowed the claimant to return to work with no change in the work restrictions.

While undergoing physical therapy, the claimant suffered an exacerbation of her back pain, and, on October 10, 2001, visited Dr. Amundson. An MRI revealed moderate inflamation and constriction of the L4-L5 discs, and Dr. Amundsun recommended surgery. He further restricted the claimant's work duties to sedentary jobs. Although surgery was scheduled, the nurse case worker for Legion cancelled the surgery.

The claimant visited Dr. Clough, who did not exclude the need for surgery but recommended conservative treatment. Thereafter, the claimant visited Dr. Hendler, who recommended the surgery originally scheduled by Dr. Amundson, after reviewing the results of an electromyogram (EMG). Throughout this period, Manor was insured by Legion.

As of January 1, 2002, Liberty replaced Legion as workers compensation insurance carrier for Manor. On January 3, 2002, the claimant suffered her third compensable injury. By court order, the claimant was allowed to seek treatment from Dr. Amundson, who reported:

"[Waunita Smith] has basically been lost to our practice since September. We had recommended a decompression for her stenosis at L4-5, clinically manifested as L5 nerve root symptoms, and a herniated disc at L5-S1 eccentric to the right with a swollen right nerve root. After we requested authorization for scheduling she has seen no less than 6 physicians and shuffled through multiple injections, physical therapy, rehab programs, all with no relief. She has now been returned by court order to our office to pursue appropriate treatment. Since last being seen the only thing that has changed is her back pain component seems to be more significant than previous. She is also exhibiting more chronic pain behaviors, most likely due to the fact that her appropriate surgical treatment has been delayed by 6-8 months."

Although Dr. Amundson was not aware of the January 3, 2002, injury, he viewed MRI reports prepared both before and after the January 2002 accident and determined that the accident did not

significantly aggravate the claimant's condition. He explained the exacerbation of pain immediately following the January 2002 injury in the following manner:

"I think the best way I can explain it, not knowing and only being told the circumstances and not knowing how long the aggravation lasted, is that it could have aggravated her pain syndrome, but anatomically it doesn't appear that it changed the pathology in her spine that we can see."

From this evidence, the Board's conclusion that the January 3, 2002, injury did not contribute to the claimant's disability is reasonable. As long as Manor provided accommodated employment for the claimant, Kansas law imposed a presumption of no work disability. *Surls*, 27 Kan. App. 2d at 92-93. But, Manor refused to accommodate the claimant following her back surgeries and, thereby, lost the presumption. 27 Kan. App. 2d at 96.

When Dr. Amundson returned the claimant to work pending the surgery scheduled in October, he imposed "sedentary level" work restrictions. Legion has failed to establish that the work restrictions imposed after the January 3, 2002, accident were more significant than the sedentary work restrictions imposed by Dr. Amundson in October 2001. Consequently, Legion has failed to establish that the claimant's January 2002 injury aggravated her work disability in any respect.

Applying the last injurious exposure rule under the circumstances of this case, we find substantial competent evidence supports the Board's conclusion that the claimant's January 3, 2002, injury caused only a temporary aggravation of the claimant's condition and did not affect her permanent work disability. We thus affirm the Board's decision that Legion, the insurance carrier at the time of the claimant's primary work-related injury, is responsible for payment of the claimant's award.

Affirmed.