(903 P.2d 775)
No. 73,251

GLENDA CONDON, *Claimant/Appellee*, v. THE BOEING COMPANY-WICHITA and AETNA CASUALTY & SURETY COMPANY, *Respondent and Insurance Carrier/Appellants*, and KANSAS WORKERS COMPENSATION FUND, *Appellee*.

Opinion filed October 6, 1995.

*Vaughn Burkholder* and *Stephen M. Kerwick*, of Foulston & Siefkin, of Wichita, for appellants.

*Vincent L. Bogart*, of Klenda, Mitchell, Austerman & Zuercher, of Wichita, for appellee Glenda Condon.

*Stacie Sanders* and *John C. Nodgaard*, of Arn, Mullins, Unruh, Kuhn & Wilson, L.L.P., of Wichita, for appellee Workers Compensation Fund.

Before RULON, P.J., GREEN, J., and EDWARD BOUKER, District Judge, assigned.

RULON, J.: This is a workers compensation case involving a disputed finding concerning the date of accident and the resulting basis for computation of permanent partial disability benefits. The Workers Compensation Board (Board) concluded the date of accident in a repeated mini-trauma case was earlier than the last day worked and, accordingly, the disability claim was to be computed

under the 1987 Workers Compensation Act and not subject to the 1993 amendments. The Boeing Company-Wichita (Boeing), and Aetna Casualty & Surety Company (Aetna) appeal. We affirm.

Glenda Condon, claimant, was hired by Boeing in 1987 as a clerk typist. In January 1993, Boeing transferred Condon to a position which required her to do data input for much longer periods of time during her work day. Sometime in May 1993, she developed pain in her wrist, arm, and elbow. Condon reported to Boeing's medical office and was initially diagnosed as having carpal tunnel syndrome.

On June 7, 1993, Condon was seen by Dr. Lesko, an orthopedic surgeon, who initiated some restrictions and recommended therapy. Lesko believed Condon suffered from a median nerve compression, some ulnar nerve irritation, and possibly carpal tunnel syndrome or a dorsal cyst. About June 15, 1993, Condon noticed pain in her shoulders, neck, and left side. Condon again contacted Boeing's medical office, which again referred her to Dr. Lesko. After doing more tests, Lesko still could not specifically identify the cause of Condon's pain.

Condon continued working at Boeing until July 6, 1993, when she was laid off. The parties agree that Condon's layoff was not related to her medical condition. Condon continued to be treated by Dr. Lesko until released on December 14, 1993, but subsequently found work as a receptionist at Wichita State University at a lesser salary.

The record is not entirely clear as to exactly when Condon first filed her workers compensation claim. However, the administrative law judge (ALJ) found that Condon sustained an accidental injury on July 6, 1993, and sustained a 12½% permanent impairment of the function of her left upper extremity, including the shoulder. Specifically, the ALJ found:

"In the instant case, the evidence as a whole establishes that the Claimant has an overuse syndrome due to a series of micro-traumas in the work place. The Claimant continued working and continued experiencing the micro-traumas up through July 6, 1993 when she was laid off. Therefore, the Claimant's last day of work is the date of injury with respect to this claim. The 1993 amendments are applicable."

Under K.S.A. 44-510d, shoulder joint, shoulder girdle, shoulder musculature, or any other shoulder structure injuries are now schedule injuries. Here, the ALJ awarded Condon 28.13 weeks of compensation in the amount of $313 for a 12½% permanent partial schedule injury, making the total award $8,804.69 (225 weeks on the schedule times 12½% less zero weeks of temporary disability equals 28.13 compensable weeks at a rate of $313). Condon then sought review by the Board.

The Board concluded that Condon's injury occurred before July 1, 1993, because:

- Claimant worked a relatively short period of time after July 1, 1993;

- claimant received restrictions from her physician prior to July 1;

- the restrictions were designed to prevent further injury; and

- any injury occurring after July 1, 1993, would be insignificant and not change claimant's limitations or ability to any extent.

The Board found that for computational purposes, Condon's injury occurred June 15, 1993, and used this date because that was the date Condon informed Dr. Lesko of her shoulder problems. The Board further found that Condon had a 29% work disability based on a 24% loss of access to the open labor market and a 34% loss in ability to earn a comparable wage. Because the injury was deemed to have occurred prior to July 1, 1993, the shoulder injuries were covered by K.S.A. 1992 Supp. 44-510e and, consequently, were injuries to the body as a whole. The Board awarded Condon 415 weeks of permanent partial disability at $101.04, for a total award of $41,931.60.

The law in Kansas is well settled that "K.S.A. 44-556 specifically subjects workers compensation appeals to the Act for Judicial Review and Civil Enforcement of Agency Actions, K.S.A. 77-601 *et seq*. That Act limits the relief granted on appeal. K.S.A. 77-621(c)." *Berry v. Boeing Military Airplanes*, 20 Kan. App. 2d 220, 222, 885 P.2d 1261 (1994). For purposes of this appeal, K.S.A. 77-621(c)(4) and (7) are relevant.

"The court shall grant relief only if it determines any one or more of the following:

. . . .

(4) the agency has erroneously interpreted or applied the law;

. . . .

(7) the agency action is based on a determination of fact, made or implied by the agency, that is not supported by evidence that is substantial when viewed in light of the record as a whole, which includes the agency record for judicial review, supplemented by any additional evidence received by the court under this act."

"The 1993 workers compensation amendments limited review of all orders issued after October 1, 1993, to questions of law. K.S.A. 44-556(a). However, whether the Board's findings of fact are supported by substantial competent evidence (K.S.A. 77-621[c][7]) is a question of law. *Tovar v. IBP, Inc.*, 15 Kan. App. 2d 782, 784, 817 P.2d 212, *rev. denied* 249 Kan. 778 (1991)." *Berry,* 20 Kan. App. 2d at 222-23.

The issue in this case is similar to one this court addressed in *Berry*. In *Berry*, the employee injured his finger on May 12, 1987, and was diagnosed with carpal tunnel syndrome on June 2, 1987. As Berry could no longer perform his original job, Boeing transferred him to a different position. The new job aggravated Berry's condition and, subsequently, Boeing transferred him to an accommodation job working with small parts. Although the new position was at a lower rate of pay, Berry accepted the transfer until he learned such position required a great deal of overtime. Boeing terminated Berry because of his unwillingness to work the overtime. 20 Kan. App. 2d at 221.

In September 1987, Berry had surgery on his left wrist. Although the surgery helped, he soon began experiencing pain in his right hand. The right wrist was operated on shortly thereafter. Berry filed a workers compensation claim on July 11, 1988. He subsequently underwent surgery on both hands. 20 Kan. App. 2d at 221.

Both the ALJ and the Board determined the date of Berry's injury was the last day he worked and, thus, the law in effect on that date controlled. Because Berry had not introduced evidence of his inability to perform work in the open labor market, or evidence regarding his ability to earn a comparable wage, he was not entitled to work disability. Berry appealed, arguing that his injury

occurred prior to July 1987 and that he should not have had to prove loss of access to the open labor market and loss of ability to earn comparable wages. 20 Kan. App. 2d at 222. The *Berry* court concluded that carpal tunnel syndrome could fit the definition of both an "accident" and an "occupational disease." 20 Kan. App. 2d at 224.

Kansas statutes provide the following definitions:

" 'Accident' means an undesigned, sudden and unexpected event or events, usually of an afflictive or unfortunate nature and often, but not necessarily, accompanied by a manifestation of force. The elements of an accident, as stated herein, are not to be construed in a strict and literal sense, but in a manner designed to effectuate the purpose of the workers compensation act that the employer bear the expense of accidental injury to a worker caused by the employment." K.S.A. 44-508(d).

" 'Occupational disease' shall mean only a disease arising out of and in the course of the employment resulting from the nature of the employment in which the employee was engaged under such employer, and which was actually contracted while so engaged. 'Nature of the employment' shall mean, for purposes of this section, that to the occupation, trade or employment in which the employee was engaged, there is attached a particular and peculiar hazard of such disease which distinguishes the employment from other occupations and employments, and which creates a hazard of such disease which is in excess of the hazard of such disease in general. The disease must appear to have had its origin in a special risk of such disease connected with the particular type of employment and to have resulted from that source as a reasonable consequence of the risk." K.S.A. 44-5a01(b).

As in *Berry*, Condon suffered from a condition of which the origin could not be determined as to a specific date. The *Berry* court acknowledged that different jurisdictions have established different methods for determining the date of injury when the injury or condition occurs over a gradual period: "According to [1B Larson, The Law of Workman's Compensation § 39.50 (1992)], there are two alternative criteria for determining the date of accident where the injury is gradual. The first is the time at which the employee can no longer perform his or her job." 20 Kan. App. 2d at 224. Here, this never occurred. There is no evidence in the record that Condon could not do her job, only that Dr. Lesko had placed certain restrictions on her. Up until her last day of work, Condon was still at the same data processing job. The other criteria

for determining the date of accident where the injury is gradual, according to Professor Larson, "is the onset of pain which necessitates medical attention." 20 Kan. App. 2d at 224. In the instant case, the use of this determinant would mean Condon's injury took place prior to July 1993, and, consequently, the Board's determination would be correct.

The *Berry* court also noted a third method formulated by the Illinois Supreme Court in *Peoria County Belwood v. Ind. Com.*, 115 Ill. 2d 524, 505 N.E.2d 1026 (1987). In that case the court found that the date of accidental injury in a "repetitive-trauma" case is the date on which the injury manifested itself. The injury was manifested when both the fact of the injury and the causal relationship to the claimant's employment became apparent to a reasonable person. 115 Ill. 2d at 531. Applying this rationale to Condon's case would set the date of the injury prior to July 1993.

A later case, *Oscar Mayer & Co. v. Industrial Comm'n*, 176 Ill. App. 3d 607, 531 N.E.2d 174 (1988), modified the *Peoria* rule by holding that the term "fact of the injury" was not synonymous with the "fact of discovery."

"We reiterate we are dealing with a repetitive-trauma injury. Nothing we say here should be interpreted as establishing an inflexible rule. Just as we reject respondent's contention the date of discovery of the condition and its relation to the employment necessarily fixes the date of accident, we reject any interpretation of this opinion which would permit the employee to always establish the date of accident in a repetitive-trauma case by reference to last date of work." 176 Ill. App. 3d at 612.

Finally, the *Berry* court, faced with multiple methods of determining the "date of injury," decided on a bright line rule which set the "date of injury" or "date of occurrence" in carpal tunnel syndrome cases at the last day worked where the employment came to an end when the employee could no longer continue the job because of the condition. 20 Kan. App. 2d at 229.

"Under our statutory scheme, disability compensation must begin at some fixed point in time. In the case of disability which is the result of a personal injury caused by accident, the date of the accident becomes the date from whence compensation flows. K.S.A. 44-510e(a)(1). In the case of an occupational disease, the injury or condition is deemed to have 'occurred' on the last day worked. K.S.A. 44-5a06." 20 Kan. App. 2d at 228.

"The fact is, carpal tunnel syndrome appears to be a hybrid condition that is neither fish nor fowl. It is a condition caused by repetitive trauma over a long period of time. While it is true that it is caused by trauma and thereby fits the definition of an 'injury caused by accident,' it is nonetheless a condition that defies any attempt to affix the precise date the accident occurred. . . .

. . . .

"We hold that carpal tunnel syndrome is a condition that cannot logically be said to be either a personal injury caused by accident or an occupational disease. Because of the complexities of locating the date of injury in a carpal tunnel syndrome case, the process is simplified and made more certain by adopting a rule that in a carpal tunnel syndrome action, the date from which compensation flows is the last date worked by the claimant. This date will not only simplify the process, it offers the least potential prejudice to future claimants. In establishing this date, we decline to label the condition. It is a condition that lies somewhere in between a personal injury caused by accident and an occupational disease. It has features of both, but best lends itself to a 'last day of work' analysis as the date of injury or occurrence." 20 Kan. App. 2d at 229-30.

Here, Condon was diagnosed with a number of possible afflictions, including: carpal tunnel syndrome, cervical spondylopathy and double crush syndrome, flexor tenosynovitis, overuse syndrome, lateral epicondylitis, a mild bulging at C6-7, overuse syndrome of the cervical spine, left shoulder girdle and left upper extremity with aggravation of degenerative changes in the cervical spine, tendonitis in the left shoulder, epicondylitis of the left elbow, and entrapment neuropathy of the ulnar nerve at the left elbow and wrist. According to the ALJ, Condon suffered from overuse syndrome and a series of micro-traumas associated with her employment. The Board found that Condon suffered injuries associated with the repetitive activities of her job and that the date of injury was June 15, 1993, the date Condon reported her additional pain to Dr. Lesko.

Under the facts shown, Condon's injuries are of the type caused by continuing repetitive activity over a period of time and are not subject to being defined as occurring on a specific date. Such injuries are described as micro-trauma injuries. Because it is impossible to determine exactly when the injury or injuries have occurred and because such injuries occur over a period of time, this type of condition is virtually the same for workers compensation purposes

as carpal tunnel syndrome. Consequently, *Berry* is persuasive authority.

Condon's injuries, like Berry's, are a hybrid condition that lies somewhere between a personal injury caused by accident and an occupational disease. Such condition, which the record shows occurred over a period of months, was obviously caused by some kind of trauma but is nevertheless a condition that defies any attempt to determine a precise accident date.

Because of these factual similarities, Boeing argues that *Berry* is controlling and that the date of the injury was Condon's last day of work, July 6, 1993. Boeing is correct in that the type of injury suffered here is sufficiently similar to that in *Berry* to make that case relevant. However, there was an additional factor present in *Berry* that is not present here.

In *Berry*, the claimant was forced to quit his job because of his injury. This court specifically held:

"The date of accident or date of occurrence in a workers compensation action involving carpal tunnel syndrome is the last day on which a claimant performs services for his or her employer *and is required to stop working as a direct result of the claimant's pain and disability resulting from carpal tunnel syndrome.*" (Emphasis added.) 20 Kan. App. 2d 220, Syl. ¶ 3.

However, when a worker suffering from work injuries caused by micro-traumas is laid off from work in a general layoff, and not because of a medical condition, the date of injury is not always the last day the worker worked.

The Board has exclusive jurisdiction to review all decisions of administrative law judges and such review includes both questions of law and fact. K.S.A. 44-555b(a). The ultimate issue on appeal is whether the Board's findings are supported by substantial competent evidence. Findings in a workers compensation case which are supported by substantial competent evidence will be upheld. *Elder v. Arma Mobile Transit Co.*, 253 Kan. 824, 826, 861 P.2d 822 (1993). " 'The term "substantial evidence" when applied to workers' compensation cases means evidence that possesses something of substance and relevant consequence or evidence that furnishes a substantial basis of fact from which the issues presented

can be reasonably resolved.' " *Crabtree v. Beech Aircraft Corp.*, 229 Kan. 440, 442, 625 P.2d 453 (1981).

In this case, the Board found, considering the record as a whole, that Condon's injury had occurred by June 15 and that the work subsequent to July 1 would not have significantly contributed to her condition. The record supports this finding as Dr. Lesko placed restrictions on Condon's work in June 1993. We are convinced there is substantial competent evidence that Condon's injury occurred prior to July 1, 1993, and, as such, her award shall be computed under the pre-1993 law.

Affirmed.