(951 P.2d 967)

No. 77,948

KARLA ALBERTY, *Appellee*, v. EXCEL CORPORATION and CRAWFORD & COMPANY, *Appellants*.

Opinion filed January 9, 1998.

*D. Shane Bangerter* and *Stephen M. Kerwick*, of Foulston & Siefkin, L.L.P., of Dodge City, for appellants.

*Chris A. Clements*, of Wilson, Lee & Gurney, of Wichita, for appellee.

Before GERNON, P.J., MARQUARDT, J., and JACK L. LIVELY, District Judge, assigned.

LIVELY, J.: Excel Corporation (Excel) appeals the decision of the Workers Compensation Board (Board). Excel contends the Board erred in determining the date claimant Karla Alberty's accident occurred.

On January 20, 1988, Alberty began work for Excel as a whizzard knife operator. Excel operates a beef slaughter house in Dodge City, Kansas. Alberty's work involved the repetitive use of knives and hooks to debone and clean meat.

On October 10, 1989, Alberty experienced right shoulder pain after feeling a pop in her shoulder. On October 18, 1989, Alberty filed an accident report with Excel.

In December 1989, Alberty began experiencing pain and cramping in her hands.

On January 23, 1992, Alberty began treatment with Dr. Trotter for a long time lump on her right thumb. Trotter treated her con-

servatively with anti-inflammatory medication. On March, 12, 1992, Trotter felt her thumb pain had been resolved.

On March 31, 1992, Alberty returned to Dr. Trotter with complaints of pain and paresthesia in both her hands and wrists. Trotter treated Alberty for tendinitis and placed her on light duty with work restrictions against the use. of hooks, knives, and vibratory tools. Excel transferred Alberty to quality assurance in packoff. On June 4, 1992, Dr. Trotter further restricted Alberty regarding use of her right arm.

On October 20, 1992, Dr. Trotter referred Alberty to Dr. Garcia, an orthopedic specialist. Garcia diagnosed Alberty with carpal tunnel syndrome and recommended bilateral carpal tunnel release surgery by Dr. Amawi. Alberty did not have surgery.

On January 4, 1993, Alberty began treatment with Dr. Melhorn, an orthopedist specializing in hand, wrist, and arm problems. Melhorn performed various tests and implemented a conservative course of treatment for Alberty. He injected her right shoulder with steroids and continued her work restrictions of no hooks or knives.

On March 3, 1993, Alberty filed an application for hearing with the Workers Compensation Division. She alleged that in January 1992, and every working day thereafter through the present, she suffered injuries to both shoulders, arms, elbows, wrists, and hands.

Alberty began maternity leave in the summer of 1993. During leave, she continued to have some numbness in both hands. When Alberty returned to work from maternity leave, she was placed back on light duty status.

On November 16, 1993, Dr. Melhorn released Alberty because she was at maximum medical improvement. On November 19, 1993, Alberty returned to her position in the quality assurance department.

On February 1, 1994, Alberty returned to Dr. Melhorn for a physical impairment rating. Melhorn noted that Alberty "has been doing her regular work activities defined as regular work, repetitive tasks 6 [hours] per 8 [hour workday], no hooks, knives, or scissors and is doing quite well. In fact, she is in the Quality Assurance Department right now, and she has task rotation as part of her

work environment." Again, Dr. Melhorn approved the work Alberty was performing. On February 2, 1994, Alberty was again placed on light duty through February 19, 1994. Since approximately January 1992, Alberty has continued to work every working day, except during her maternity leave, through the present.

The case was submitted on stipulated evidence to the administrative law judge (ALJ). The parties agreed that Alberty's permanent partial general disability was 8.5 percent. The issues before the ALJ were the date of the accident and the Workers Compensation Fund liability. Fund liability is not an issue in this appeal.

The ALJ analyzed the case under *Condon v. Boeing Co.*, 21 Kan. App. 2d 580, 903 P.2d 775 (1995), determined that Dr. Trotter put Alberty on work restrictions on January 23, 1992, and found that this was the date of Alberty's accident.

Based on a January 23, 1992, date of accident, the ALJ awarded Alberty compensation under the 1987 Workers Compensation Act. She was awarded compensation for permanent partial disability of $24.49 per week for 213 weeks and compensation for permanent partial general disability of $24.49 for 202 weeks. The total award was $10,163.35.

The Board disagreed with the ALJ and held that February 19, 1994, the last day Alberty worked on light duty before accepting a permanent accommodated position in packoff, was the date of accident. Based on a date of accident of February 19, 1994, the Board awarded Alberty compensation under the 1993 amendments to the Workers Compensation Act. She was awarded $288.08 per week for 35.28 weeks of permanent partial disability, for a total award of $10,163.46.

*What is the date of accident for injuries resulting in upper extremity tendinitis and bilateral carpal tunnel syndrome when the claimant continues to work for the respondent in an accommodated position?*

The parties dispute the appropriate standard of review. Alberty states that if the Board's finding of February 19, 1994, as the date of accident is supported by substantial competent evidence, viewed in a light most favorable to the prevailing party, this court must

affirm. Excel argues that the Board applied the wrong legal test to the question of the date of accident; therefore, this court's standard of review is de novo.

The 1993 workers compensation amendments limited review of all orders issued after October 1, 1993, to questions of law. K.S.A. 44-556(a). However, whether the Board's findings of fact are supported by substantial competent evidence is a question of law. *Berry v. Boeing Military Airplanes*, 20 Kan. App. 2d 220, 223, 885 P.2d 1261 (1994).

"In workers compensation cases, the law in effect at the time of the injury governs the rights and obligations of the parties." *Osborn v. Electric Corp. of Kansas City*, 23 Kan. App. 2d 868, Syl. ¶ 8, 936 P.2d 297, *rev. denied* 262 Kan. 962 (1997).

The date of accident is important in this case because if Alberty's date of accident is deemed to be prior to July 1, 1993, as the ALJ found, Alberty's award will be paid out at a rate proportional to her impairment, 8.5 percent, over the remaining portion of the 415-week statutory period. See K.S.A. 1992 Supp. 44-510e(a). If, however, the date of accident is determined to be after July 1, 1993, Alberty's award will be paid out at the maximum weekly rate for a shorter period of time. See K.S.A. 44-510e(a). The total amount of the award will not be affected.

In *Berry*, this court held that the last date the claimant worked before the claimant's condition necessitated withdrawal from work was the date of accident in carpal tunnel cases:

"The date of 'occurrence' of [carpal tunnel syndrome] is also the last day of work. This is the date on which claimant's condition became so painful and debilitating that he could no longer perform his job functions. This was the date, in fact, on which he became 'disabled' as a result of carpal tunnel syndrome. The selection of the last day of work as the date of occurrence or date of accident satisfies the philosophy of the Workers Compensation Act and does not offend a logical approach to the issue." 20 Kan. App. 2d at 229.

The *Berry* court considered and rejected the date "diagnosed" or the date the condition "manifested itself" as the date of occurrence in carpal tunnel cases because, considering the statute of limitations, those dates might prejudice a worker who, despite pain and discomfort, continued to work long after his or her carpal tun-

nel was diagnosed. 20 Kan. App. 2d at 228. The court stated that finding the last day of work to be the date of injury in carpal tunnel cases simplifies the process and offers the least potential prejudice to future claimants. 20 Kan. App. 2d at 230.

In *Condon*, 21 Kan. App. 2d 580, this court considered a repetitive trauma case where the claimant's condition did not require him to leave his job. In *Condon*, the claimant no longer worked for the respondent, but she had been subject to a general layoff that had nothing to do with her medical condition. This court held that when a worker suffering from micro-trauma work injuries is laid off in a general layoff and not because of a medical condition, the date of injury is the date the claimant's physician ordered work restrictions. Any work subsequent to that date would not have significantly contributed to claimant's condition. 21 Kan. App. 2d at 588.

The facts in the instant case are similar to the facts in *Condon* in that Alberty's carpal tunnel syndrome has not necessitated that she leave her employment with Excel.

The ALJ applied the reasoning articulated in *Condon* and found that "the date at which point the work subsequent to that date would not have significantly contributed to the claimant's condition is January 23, 1992. This is the date the claimant was examined by Dr. Trotter and placed on restrictions." Findings in a workers compensation case that are supported by substantial competent evidence will be upheld. Substantial evidence in workers compensation cases is evidence that possesses something of substance and relevant consequence or evidence that furnishes a substantial basis of fact from which the issues presented can be reasonably resolved. *Condon*, 21 Kan. App. 2d at 587-88. There is not substantial competent evidence to support January 23, 1992, as the date the doctor first put Alberty on work restrictions. Dr. Trotter's notes are very clear that he put Alberty on work restrictions for the first time on March 31, 1992. There are no employment records in the file to dispute that date.

On appeal, the Board rejected January 23, 1992, as the date of accident because there was evidence that Alberty sustained injury to her upper extremities after that date. The Board noted that on

November 27, 1992, Excel wrote Dr. Melhorn, indicating that Alberty's symptoms continued to worsen despite her transfer from a whizzard knife operator to a quality assurance position in packoff. The Board held that February 19, 1994, the last day of work on light duty before Alberty accepted a permanent accommodated position in packoff, was the date of accident. This finding is inconsistent with *Condon.*

Alberty was first given work restrictions on March 31, 1992, when Dr. Trotter limited her to no work with hooks, knives, and vibratory tools. Under *Condon,* the date of accident in a repetitive trauma case is the last day of work before work restrictions are implemented. Therefore, this court finds that March 31, 1992, is the date of Alberty's accident.

It should be noted, however, that if Alberty's medical condition had caused her to quit working, the *Berry* holding would have been applicable, and the date of her accident would have been her last day of work.

The order of the Workers Compensation Board is reversed and remanded with instructions to enter an award consistent with that of the ALJ pursuant to K.S.A. 1992 Supp. 44-510e(a).

Reversed and remanded.