(6 P.3d 947)
No. 82,555

SARAH LOTT-EDWARDS, *Claimant/Appellee*, v. AMERICOLD CORPORATION, *Respondent/Appellant*, and WAUSAU UNDERWRITERS INSURANCE COMPANY, *Insurance Carrier*, and NATIONAL UNION FIRE INSURANCE COMPANY, and TRAVELERS PROPERTY CASUALTY, *Insurance Carriers/Appellants*, and KANSAS WORKERS COMPENSATION FUND, *Appellee*.

Opinion filed June 23, 2000.

*John B. Rathmel* and *William G. Belden*, of Law Offices of John B. Rathmel, of Overland Park, for appellant National Union Fire Insurance Company.

*Brian J. Doherty* and *Theresa A. Otto*, of Field, Gentry & Benjamin, P.C., of Kansas City, Missouri, and *Douglas M. Greenwald* and *Gregory D. Worth* of McAnany, Van Cleave & Phillips, P.A., of Kansas City, Kansas, for appellant Travelers Property Casualty.

*Robert V. Wells*, of Wells & Alvarez, of Kansas City, Missouri, and *Samuel J. Wells*, of Fairway, for appellee claimant.

*Steven J. Brady* and *Patrick J. Gregory*, of Lathrop & Gage, L.C., of Overland Park, for appellee Workers Compensation Fund.

Before KNUDSON, P.J., PIERRON, J., and VAN HAMPTON, District Judge, assigned.

KNUDSON, J.: The respondent Americold Corporation (Americold) and its workers compensation insurance carriers, National Union Fire Insurance Company of New York (National Union) and Travelers Property Casualty (Travelers), appeal a final award of benefits to Sarah Lott-Edwards by the Workers Compensation Board (Board). The Workers Compensation Fund (Fund) was impleaded and is also a party to this appeal.

Numerous issues are raised in this complex litigation. At the heart of the controversy is the application of the last-day-worked rule to determine the date of Edwards' accident.

We have jurisdiction under the Workers Compensation Act and in accordance with the Act for Judicial Review and Civil Enforce-

ment of Agency Actions. See K.S.A. 1999 Supp. 44-556; K.S.A. 77-601 *et seq.* The scope of judicial review is stated in K.S.A. 77-621.

This appeal arises out of three separate workers compensation dockets that were consolidated for administrative hearings. The following stipulations entered into by the parties prior to hearing before the administrative law judge (ALJ) and adopted by the Board are helpful in providing an overview and setting the stage for a discussion of the legal issues.

"The parties in Docket No. 175,770-Accident A admit by stipulation: Injury date-August 5, 1989, in Wyandotte County, Kansas, in the course of claimant's employment; that it received notice; a relationship existed; and Kansas coverage was in effect, but denies a claim was made. This docket involves the Wausau Insurance Company. Temporary total disability was paid at 5.29 weeks at $271.00 to September 15, 1989, for a total of $1,433.59. Medical expenses totaled $1,316.05. The average weekly wage was $468.00.

"The parties in Docket No. 175,771-Accident B admit by stipulation: Injury date-June 15, 1992, in Wyandotte County, Kansas, that a relationship existed; that Kansas coverage was in effect; and that a written claim was made, but denies the accident happened on the date and in the course of claimant's employment as alleged. This docket involves the National Union Fire Insurance Company. Temporary total disability was paid at 61-2/7 weeks at $289.00 totaling $17,708.00 and medical expenses amounted to $30,000.00.

"The respondent insurance company Travelers Insurance Company admits in Docket No. 223,800-Accident C that it was the carrier for Americold Corporation at the time of the accident, March 25, 1995, but denies that the accident happened; that it was notified; that it had written notice; and, in general, denies the claim in totality."

In its final order, the Board noted that the ALJ denied Edwards' claim in Docket No. 175,770 and the claimant chose not to proceed with review before the Board.

Based upon the above stipulations, one would assume an analysis based upon distinct accidents or occurrences, with Edwards' benefits to accrue on the date of each accident. However, the Board was persuaded Edwards suffered from bilateral carpal tunnel syndrome and, under *Berry v. Boeing Military Airplanes*, 20 Kan. App. 2d 220, 227, 885 P.2d 1261 (1994), the appropriate date of accident was March 10, 1995, her last day worked. This led the Board to the following conclusions:

1. National Union should be responsible for temporary total disability compensation and medical expenses incurred during its period of coverage;

2. Travelers should be responsible for the permanent total disability benefits awarded since the "date of accident," March 10, 1995, was within its period of coverage; and

3. The Fund has no liability because the date of accident was March 10, 1995, and the Fund was absolved of liability for work-related accidents occurring on or after July 1, 1994. See K.S.A. 1999 Supp. 44-566a(e)(1) and K.S.A. 1999 Supp. 44-567(a)(1).

We will begin our analysis by considering the issues raised by Travelers.

## No Majority Decision

Travelers contends the Board entered a plurality decision contrary to K.S.A. 1999 Supp. 44-555c(k), which states: "All decisions, reviews and determinations by the board shall be approved in writing by at least three board members."

All five Board members signed the decision. The Board's lead opinion was signed by two members; a third member concurred except for the holding that the Board had jurisdiction to apportion liability between Travelers and National Union; a fourth member concurred as to the apportionment holding but dissented as to the other holdings. We conclude "at least three board members" approved each point of law decided and the Board's final order is consistent with the requirements of K.S.A. 1999 Supp. 44-555c(k). The Board functions as a quasi-judicial body, and our interpretation of this statute is consistent with the rule regarding decision-making powers of a collegial court. See *State v. Dowe*, 120 Wis. 2d 192, 194, 352 N.W.2d 660 (1984).

## Date of Accident

Travelers contends the Board erred in finding March 10, 1995, was the date of accident for the purpose of apportioning liability between the insurance carriers. In its order, the Board explained:

"The Appeals Board is mindful that claimant was taken off work in 1994 for carpal tunnel release surgeries and missed work during that time. However, at that time, claimant's injuries were caused by her repetitive work activities and she

was returned to *essentially those same repetitive work activities* which again aggravated and worsened her injuries to the point on March 10, 1995, she could no longer work. The evidence in the record also does not permit the separation of the injuries from June 1992 through March 10, 1995. Therefore, the Appeals Board concludes the evidence in the record does not adapt to the assignment of a date of accident to any specific event because the injuries occurred over a period of time. See *Depew v. NCR Engineering & Mfg.*, 263 Kan. 15, 947 P.2d 1 (1997). Accordingly, the Appeals Board concludes claimant's last day worked is the most appropriate date to use to determine what law applies and when permanent disability benefits begin." (Emphasis added.)

Travelers argues that because Edwards underwent surgery for bilateral carpal tunnel and returned to work in an accommodated position, her date of accident would have been in 1994, before it was on the coverage. This issue was recently considered in *Treaster v. Dillon Companies, Inc.*, 267 Kan. 610, 987 P.2d 325 (1999). In *Treaster*, the court stated:

"Where an accommodated position is offered and accepted that is not substantially the same as the previous position the claimant occupied, the date of accident or occurrence in a repetitive use injury, a carpal tunnel syndrome, or a microtrauma case is the last day the claimant performed the earlier work tasks." 267 Kan. 610, Syl. ¶ 4.

In *Cozad v. Boeing Military Airplane Co.*, 27 Kan. App. 2d 206, 2 P.3d 175 (2000), the claimant's accommodated job was *not* substantially the same as her regular employment. A panel of this court applied the holding in *Treaster* but held the last day the claimant performed the earlier, regular work tasks was the date benefits accrued since the claimant's accommodated job was, in effect, an attenuating event negating a claim of any further repetitive injury arising out of the accommodated position.

Here, the Board found Edwards' duties upon returning from the 1994 surgery were substantially the same as her previous duties, and, therefore, her date of injury should be the last day worked—March 10, 1995. Thus, there was no attentuating event. Edwards' repetitive injury was relentless, continuing without respite after she returned to duties the Board concluded were not materially different than before her initial surgery. We conclude the Board's findings are supported by substantial competent evidence and are consistent with *Treaster* and *Cozad*.

Travelers insists there still remains the issue of proper apportionment of liability between the insurance companies. Travelers argues the last-day-worked rule should not be applied to determine its coverage dispute with National Union when the dispute does not affect the benefits received by Edwards. This argument was recently rejected in *Anderson v. Boeing Co.*, 25 Kan. App. 2d 220, 960 P.2d 768 (1998). In *Anderson,* Judge Lewis stated:

"We fail to see why the rule laid down in *Berry* should not be applied equally in a case where the dispute is over coverage between two insurance companies. The actual date of injury is very difficult to pinpoint in these cases, but the last day of work is not." 25 Kan. App. 2d at 222.

We agree with the *Anderson* decision. Travelers' claim of error is denied.

## Permanent Total Disability

Travelers contends the Board erred by awarding permanent total disability benefits when Edwards did not request such benefits.

In granting Edwards' permanent total disability benefits, the Board said:

"The nature and extent of claimant's disability has been at issue throughout the trial of this claim and nature and extent is all encompassing; it includes whether claimant's disability is total or partial, permanent or temporary, functional or work, and even whether claimant has any disability at all. Also, the nature and extent issue was never limited by any stipulation of the parties. Respondent cannot argue surprise or prejudice. Claimant testified she cannot work and her vocational expert agreed that claimant is realistically unemployable. Respondent then had an opportunity to rebut this evidence. Even though claimant argued she had proven a 100 percent work disability rather than a permanent total disability, what evidence would respondent have offered to rebut a claim for a permanent total disability that it would not also offer to defend a claim for a 100 percent work disability? We cannot think of any. Thus, even though claimant may never have alleged a permanent total disability in her submission letter to the [ALJ] or in her brief to the Appeals Board, she is not required to do so. Nature and extent of disability is the issue, and the Appeals Board's determination of that issue must be based upon what the evidence in the record establishes."

We note an argument similar to Travelers' was raised in *Place v. Falcon Seaboard Drilling Co.*, 186 Kan. 523, 527-28, 350 P.2d 788 (1960). In this case, the claimant stated in his claim that his condition was spondylolisthesis. The medical evidence showed the

claimant had suffered a low back strain. The insurance carrier stated it had to change its position because the original claim was congenital in nature and the evidence presented created a work-related injury. The court reiterated that a written claim under the workers compensation statutes does not need to take any particular form to be considered a claim. The court held that there was no error in allowing an award because the claim stated one injury and the medical evidence proved another. The court found the ample testimony supported the lower court's findings and that at the hearing, the insurance carrier could have put on any defense it wished after it heard the expert testimony.

We find the reasoning in *Place* applicable in Edwards' case. The nature and extent of Edwards' disability was a question of fact for the Board to determine based upon substantial competent evidence. See *Wardlow v. ANR Freight Systems*, 19 Kan. App. 2d 110, 112, 872 P.2d 299 (1993). The Board did not err in awarding Edwards permanent total disability benefits.

### Notice of Accident and Filing of Claim

Travelers contends Edwards did not give timely notice of her accident or file a timely written claim.

In its order, the Board explained:

"As previously noted, claimant requested and was granted leave to amend her Application for Hearing to allow a third accident date of March 1, 1995. Claimant did so by filing another application for hearing on June 26, 1997, which was assigned Docket No. 223,800. Accordingly, the Appeals Board concludes Docket No. 175,771 was amended and was merged with Docket No. 223,800 to include a March 1, 1995, accident date.

"The Appeals Board concludes claimant's timely written claim requirements were previously satisfied when claimant filed her Application for Hearing on March 22, 1993, that alleged an accident date of June 15, 1992, and was assigned Docket No. 175,771. That application also alleged repetitive use injuries to claimant's right and left upper extremity and back. Therefore, since Docket No. 175,771 was amended and was merged with Docket No. 223,800, the claimant has met the timely written claim requirement."

We agree with the Board. K.S.A. 44-520 generally requires that the employee give notice to the *employer* within 10 days after the accident "except that actual knowledge of the accident by the *em-*

*ployer* or the employer's duly authorized agent shall render the giving of such notice unnecessary." (Emphasis added.) In this case, additional notice is not required since Americold clearly had notice of Edwards' repetitive injury. We also note that every workers compensation policy in Kansas must contain a clause that provides between

"any employer and the insurer, notice to and knowledge of the occurrence of injury or death on the part of the insured shall be notice and knowledge on the part of the insurer; and jurisdiction of the insured shall be jurisdiction of the insurer and the insurer shall be bound by every agreement, adjudgment, award, or judgment rendered against the insured." K.S.A. 40-2212.

Turning to the written claim issue, we note its purpose is to enable the *employer* to know about the injury in order to make a timely investigation. *Pyeatt v. Roadway Express, Inc.*, 243 Kan. 200, 204, 756 P.2d 438 (1988). In *Pyeatt*, the court found the employer had sufficient notice that the subsequent injury aggravated the prior injury and the compensation sought was for the cumulative effect of two work-related accidents. The court noted that Pyeatt's ultimate claim differed from his initial claim, but the employer was not prejudiced because the cause and type of the injury was known to the employer. The court held that even though Pyeatt did not amend his original claim, the employer had sufficient notice and knowledge of the accidents and sufficient knowledge that the claim for compensation was based on both accidents. 243 Kan. at 206.

The rationale in *Pyeatt* is applicable as to Edwards' claim based upon bilateral carpal tunnel syndrome, a continuous injury for which the employer had previously provided medical treatment and temporary compensation under a prior written claim. Coupled with the Board's reasoning of merger, we conclude Travelers' claims are without legal merit.

### Denial of Due Process

Travelers argues its due process rights were violated because its retained attorney was denied the opportunity to confront witnesses who had previously testified before Travelers entered the fray. The law does not favor Travelers' argument. It is the employer, Amer-

icold, that is entitled to notice and receipt of a written claim, not its insurance company. See K.S.A. 44-520; K.S.A. 44-520a. It is the employer that must be given proper notice and an opportunity to be heard and defend against a claim; the insurance company has no separate right of procedural due process flowing from provisions of the Workers Compensation Act. See *Landes v. Smith*, 189 Kan. 229, 235, 368 P.2d 302 (1962). Throughout this proceeding the interests of Americold have been vigorously defended and there can be no credible claim that the employer's due process rights have been violated. We conclude Travelers' claim is without legal merit.

We next turn to the claims of National Union.

### Liability for Temporary Total and Medical Benefits

National Union contends the Board erred in not requiring Travelers to reimburse National Union for compensation benefits previously paid under the ALJ's preliminary decision entered in July 1993. National Union argues the Board's decision is contrary to the last-day-worked rule under *Berry*.

In concluding National Union should be responsible for the benefits incurred and paid during its period of coverage, the Board stated:

"The Appeals Board concludes, since it found claimant suffered from repetitive injuries over a period of time from June 1992 and culminating on claimant's last day of work on March 10, 1995, National Union should be responsible for the temporary total disability compensation and medical expenses incurred during its period of coverage."

We agree with the Board. The last-day-worked rule as most recently crystallized in *Treaster* provides coherency in ascertaining the date of injury in a repetitive trauma case. The rule "disregards attempts by either claimants or respondents to move a date of accident or occurrence to before or after an advantageous time for purely monetary or coverage reasons." 267 Kan. at 624. The rule, however, was not crafted to excuse an insurance company from liability for benefits paid during its coverage period. It is logical that in such cases the first insurer would not be entitled to reimbursement from a subsequent insurer. A contrary conclusion would

result in Travelers reimbursing National Union for benefits that were incurred before Travelers was even on the risk.

## Reimbursement Claim

National Union claims a right to reimbursement from the Fund under K.S.A. 1999 Supp. 44-534a, which states, in material part:

"(b) If compensation in the form of medical benefits or temporary total disability benefits has been paid by the employer or the employer's insurance carrier . . . and, upon a full hearing on the claim, the amount of compensation to which the employee is entitled is found to be less than the amount of compensation paid or is totally disallowed, the employer and the employer's insurance carrier shall be reimbursed from the [Fund] . . . for all amounts of compensation so paid which are in excess of the amount of compensation *the employee is entitled to* . . . as determined in the full hearing on the claim." (Emphasis added.)

National Union also suggests *Kimber v. U.S.D. No. 418*, 24 Kan. App. 2d 280, 283, 944 P.2d 169, *rev. denied* 263 Kan. 886 (1997), is supportive of its contention.

The Board addressed this issue and concluded:

"Travelers should reimburse National Union for any temporary total disability compensation and medical treatment incurred and paid by National Union *after* [Travelers] coverage commenced. See [*Kimber*, 24 Kan. App. 2d at 283].

"The Appeals Board acknowledges *Kimber* also held that the non-liable employer that paid compensation benefits before the date of accident could seek reimbursement for such excess payment from the Workers Compensation Fund pursuant to K.S.A. 44-534a(b). 24 Kan. App. 2d at 283. However, *Kimber* involved two separate employers with one date of accident as opposed to this case where there is only one employer involved with a series of accidents culminating on the last day claimant worked. The Appeals Board concludes *Kimber* does not apply when there are repetitive trauma injuries which are sustained by a series of accidents over a period of time. To hold otherwise would require a subsequent insurance carrier to pay benefits that were incurred long before that carrier began its coverage. The Appeals Board concludes National Union should remain responsible for temporary total disability benefits and medical expenses incurred for the repetitive trauma injuries claimant sustained over the period of accident during its period of coverage. Finding otherwise would jeopardize the prompt payment of temporary total disability and medical benefits in repetitive trauma cases until claimant left work or permanent restrictions were implemented as a result of the injuries. See *Alberty v. Excel Corp.*, 24 Kan. App. 2d 678, 951 P.2d 967, *rev. denied* 264 Kan. [821] (1998); *Condon v. Boeing Co.*, 21 Kan. App. 2d 580, 903 P.2d 775 (1995); *Berry v. Boeing Military Airplanes*, 20 Kan. App. 2d

220, 885 P.2d 1261 (1994). The *Berry* and *Condon* line of cases do not mean an injured worker can not have a need for workers compensation benefits before the 'date of accident.' Last date worked is a legal fiction to fix a date for the assessment of permanent disability benefits. It must not be lost sight of that repetitive trauma cases are a series of accidents, not a single accident." (Emphasis added.)

Interpretation of a statute by an administrative agency charged with the responsibility of enforcing that statute is generally entitled to great judicial deference. Such interpretation may, in fact, be entitled to controlling significance in judicial proceedings. If there is a rational basis for the agency's interpretation, it should be upheld on judicial review. *In re Application of Zivanovic*, 261 Kan. 191, 193, 929 P.2d 1377 (1996).

We find the Board's interpretation of K.S.A. 1999 Supp. 44-534a(b) compelling. We also agree with the Board's analysis of *Kimber* and its finding that it is not persuasive authority supporting National Union's claim.

National Union further claims a right of reimbursement from the Fund under K.S.A. 1999 Supp. 44-567(a)(2). This claim is without legal merit. As already discussed, Edwards' date of accident under the last-day-worked rule was March 10, 1995. The legislature has absolved the Fund of all liability for work-related accidents occurring on or after July 1, 1994. See K.S.A. 1999 Supp. 44-566a(e)(1) and K.S.A. 1999 Supp. 44-567(a)(1).

We conclude the Board did not err in denying National Union's claim for reimbursement against the Fund.

In summary, we believe there is substantial competent evidence to support the factual findings made by the Board, and under the doctrine of operative construction, great deference should be given to its interpretation of statutory law. Finally, we are convinced the Board correctly applied the last-day-worked rule in determining the liability of National Union and Travelers and in denying National Union's claim for reimbursement from the Fund.

Affirmed.