(165 P.3d 1071)

No. 97,519

MARY ANN FLETCHER, *Claimant/Appellee*, v. U.S.D. NO. 229, *Respondent/Appellee*, and KANSAS ASSOC. OF SCHOOL BOARDS WORKERS COMPENSATION FUND, INC., *Carrier/Appellee*, and BLUE VALLEY SCHOOL DISTRICT, *Self-insured/Appellant*.

Opinion filed August 31, 2007.

*Christopher McCurdy* and *James L. MowBray*, of Wallace, Saunders, Austin, Brown and Enochs, Chartered, of Overland Park, for appellant Blue Valley School District.

*Frederick J. Greenbaum* and *Heather E. Sigler*, of McAnany, Van Cleave & Phillips, P.A., of Kansas City, for appellees U.S.D. No. 229 and Kansas Assoc. of School Boards Workers Compensation Fund, Inc.

*Michael A. Preston*, of Yeretsky & Maher, L.L.C., of Overland Park, for appellee Mary Ann Fletcher.

Before MARQUARDT, P.J., MCANANY, J., and BRAZIL, S.J.

MCANANY, J.: This appeal centers on the issue of who will pay for Mary Ann Fletcher's work-related injuries: her employer who became self-insured on July 1, 2004, or her employer's insurer who provided workers compensation coverage prior to that date.

Fletcher worked as a custodian for the Blue Valley School District where her job duties included waxing, buffing, mopping and stripping floors; removing tables and desks; cleaning; and other building maintenance. She regularly used vibrating equipment, such as scrubbing and buffing machines, to accomplish these tasks.

She began experiencing tingling in her hands in 1998 or 1999, reported it to her supervisor, and sought medical treatment on her own.

In May 2000, Blue Valley referred Fletcher to Dr. John B. Moore, who ultimately performed cubital tunnel release surgery on her elbows. He repaired her right elbow in December 2002 and performed the same surgery on her left elbow the following month. He released her to return to work without restrictions in April 2003. A few months later, Fletcher again experienced tingling, numbness, and related complaints in her hands. She was again examined by Moore, who diagnosed her with carpal tunnel syndrome.

In June 2003, Dr. Edward J. Prostic examined Fletcher and opined that Fletcher's injuries were caused by her custodial work. He rated her as having a 15% functional impairment to the body as a whole.

On November 3, 2003, Moore performed bilateral carpal tunnel releases on both of Fletcher's wrists. He released her to return to work with restrictions on April 2, 2004. Moore rated Fletcher as having a 9% whole person functional impairment, noting that Fletcher's rating would have been 17% but was reduced because her grip strength tests indicated symptom magnification in half the tests.

Her restrictions were lifted and she returned to her regular work duties, causing her again to experience pain in her wrists, for which she received injections by a hand specialist, Dr. Michael Hall. She was again examined by Prostic who opined that she suffered additional injury and increased impairment, resulting in an increased rating of 20% whole person functional impairment.

On July 1, 2004, Blue Valley became self-insured with respect to workers compensation claims. Prior to this time Blue Valley had coverage through the Kansas Association of School Boards Workers Compensation Fund.

Fletcher continued to work with ongoing symptoms until February 8, 2005, her last day of employment. The following day she injured her lower back in an automobile accident which prevented her from returning to work.

At the regular hearing in December 2005, the ALJ found that Fletcher's date of accident was the last day of employment, February 8, 2005, and that her permanent functional impairment was 14.5% to the body as a whole. Blue Valley's insurer paid Fletcher's authorized medical expenses to June 30, 2004, the end date for insurance coverage, along with temporary total disability benefits due up to that date. Self-insured Blue Valley was ordered to pay all authorized medical expenses thereafter, together with permanent partial disability benefits based upon 14.5% impairment to the body as a whole.

Upon review, the Workers Compensation Board found that Moore improperly reduced his rating of Fletchers's impairment from 17% to 9% based on alleged symptom magnification. Thus, based on Moore's unadjusted rating of 17% and Prostic's rating of 20%, the Board found that Fletcher suffered an 18.5% whole person functional impairment. The Board confirmed that the last-day-worked rule applied.

Blue Valley appeals.

### Last-Day-Worked Rule

Blue Valley claims the Board erred in applying the bright-line last-day-worked rule in *Treaster v. Dillon Companies, Inc.*, 267 Kan. 610, 987 P.2d 325 (1999), to determine Fletcher's date of injury. It argues that since Fletcher ended her employment due to an unrelated auto accident and not due to pain and disability resulting from her carpal tunnel syndrome, her date of accident was prior to July 1, 2004, when Blue Valley had insurance coverage.

Our review of decisions by the Workers Compensation Board under the provisions of the Kansas Act for Judicial Review and Civil Enforcement of Agency Actions (KJRA), K.S.A. 77-601 *et seq.*, see K.S.A. 2006 Supp. 44-556(a), is limited to determining whether the Board erroneously interpreted or applied the law, and whether the Board's decision is supported by substantial competent evidence in light of the whole record or is unreasonable, arbitrary, or capricious.

The bright-line last-day-worked rule, which Blue Valley claims does not apply, is used to establish the date of injury for a repeti-

tive, microtraumatic injury such as carpal tunnel syndrome. Under the rule, the date of injury is the last day worked. See *Kimbrough v. University of Kansas Med. Center*, 276 Kan. 853, 855, 79 P.3d 1289 (2003). The rule was established in *Berry v. Boeing Military Airplanes*, 20 Kan. App. 2d 220, 229-30, 855 P.2d 1261 (1994), and approved of by our Supreme Court in *Treaster*, 267 Kan. at 623-24. In *Treaster*, our Supreme Court stated:

"We do not limit *Berry* to only situations where the claimant could no longer continue his or her employment because of medical conditions. The expected result of *Berry* was for workers to be allowed the latest possible date for their claim period to begin, not for claimants and respondents to try to pick a date of accident or occurrence that best serves their financial purposes." 267 Kan. at 623.

Blue Valley argues that *Condon v. Boeing Co.*, 21 Kan. App. 2d 580, 903 P.2d 775 (1995), applies, not *Treaster*. In *Condon*, the court recognized an exception to the bright-line rule in *Berry* when the claimant, who suffered from injuries caused by microtraumas, was laid off in a general layoff. Our court held that because the cessation of employment was not due to a medical condition, the date of injury was not always the last day worked. However, in *Treaster*, our Supreme Court analyzed *Condon* as follows:

"This retreat from *Berry*'s bright line rule appears to be largely fact driven, as the opinion holds there was substantial competent evidence to uphold the Board's decision that restrictions placed on Condon had occurred by June 15, 1993, and work subsequent to July 1 would not have significantly contributed to her condition when she was laid off for reasons not related to her medical condition on July 6, 1993.

. . . .

". . . With the Board's decision being upheld only because it was supported by substantial competent evidence, *Condon* should be limited to its facts and not used to erode *Berry*'s authority.

. . . .

"To the extent we have stated herein, the logic and results of *Condon* . . . are disapproved." *Treaster*, 267 Kan. at 619-24.

*Treaster* controls in cases of repetitive microtraumatic injuries, and we are bound to follow it. *Noone v. Chalet of Wichita*, 32 Kan. App. 2d 1230, Syl. ¶ 1, 96 P.3d 674, *rev. denied* 278 Kan. 846 (2004).

Finally, Blue Valley urges that *Durham v. Cessna Aircraft Co.*, 24 Kan. App. 2d 334, 945 P.2d 8, *rev. denied* 263 Kan. 885 (1997), controls. It does not. In *Durham*, the claimant suffered a repetitive use type injury to his shoulder but lost no work from the injury until July 22, 1993, when he had surgery on his shoulder. He then returned to work in an accommodated position. This court concluded that the date of injury was July 22, 1993, the last day Durham worked in the position which caused his injury. 24 Kan. App. 2d at 336. Unlike in *Durham*, Fletcher returned to work doing the same activities that caused her injuries. For Durham, the microtraumas ended when he left work for his surgery. For Fletcher, they continued throughout her employment.

After Fletcher's diagnosis and treatment for a repetitive trauma injury, she continued to work as a custodian for Blue Valley doing the same work that caused her injury. She complained of pain and numbness associated with this injury until she left Blue Valley on February 8, 2005. Prostic testified that the microtraumas associated with her work caused her injury and continued through the last day of her employment.

We find no error by the Board in applying the last-day-worked rule to Fletcher's injury. *Treaster* makes it clear that it is irrelevant that Fletcher left her employment at Blue Valley because of an unrelated accident, not because of her carpal tunnel syndrome. The bright-line rule in *Berry* is not limited to situations in which the claimant can no longer continue employment because of a medical condition. Accordingly, the Board did not err in applying the bright-line last-day-worked rule in establishing February 8, 2005, as the date of her injury.

*Fletcher's Functional Impairment*

Blue Valley claims the Board erred in relying on Prostic's opinion that Fletcher suffered a 20% whole person functional impairment and thereby calculating that Fletcher suffered an 18.5% whole person functional impairment.

In examining this claim our task is to determine whether the Board's decision is supported by substantial, competent evidence in light of the whole record or whether the Board's decision is

unreasonable, arbitrary, or capricious. See *Kimbrough*, 276 Kan. at 855. In doing so, we review the evidence in the light most favorable to the prevailing party and do not reweigh the evidence or assess the credibility of the witnesses. *Neal v. Hy-Vee*, 277 Kan. 1, 16-17, 81 P.3d 425 (2003).

Prostic's initial opinion was that Fletcher suffered a 15% functional impairment to the body as a whole. He examined Fletcher again in July 2004 and, based on that examination, found that she suffered additional injury related to her work duties and that her functional impairment had increased to 20% of the body as a whole. Prostic based his opinion on the residuals of the cubital tunnel syndrome and carpal tunnel syndrome which Fletcher suffered after her surgery and the additional microtraumatic injuries she sustained up to the date of his last examination. Thus, there is substantial, competent evidence to support the Board's reliance on Prostic's opinion that Fletcher suffered a 20% functional impairment.

Affirmed.