Nos. 81,691 and 81,692

MANUEL RIVERA, *Claimant-Appellant,* and MARTIN ORTEGA, *Claimant-Appellant,* v. CIMARRON DAIRY, *Respondent-Appellee,* and KANSAS WORKERS COMPENSATION FUND, *Appellee.*

(988 P.2d 235)

Opinion filed July 30, 1999.

*Stanley R. Ausemus*, of Stanley R. Ausemus, Chartered, of Emporia, was on the briefs for appellants.

*D. Shane Bangerter*, of Foulston & Siefkin, L.L.P., of Dodge City, argued the cause and was on the brief for appellee Cimarron Dairy.

The opinion of the court was delivered by

LOCKETT, J.: Workers appeal the order of the Workers Compensation Board (Board) that an agricultural dairy enterprise, not subject to mandatory coverage of the Workers Compensation Act (Act), which purchased workers compensation insurance during construction of the dairy and later allowed the insurance policy to lapse without filing an election to withdraw, was no longer subject to the Act. The dairy enterprise asserts that this court has no jurisdiction to review the Board's decision because its order resulted from a preliminary hearing.

This is a consolidated appeal of two workers, Manuel Rivera and Martin Ortega, who were employed by Cimarron Dairy (Cimarron). Each sustained injuries in unrelated accidents at work. The facts of the accidents are not pertinent to the issues on appeal and, therefore, are not set out in detail. The issue before the Board on review of the preliminary award of benefits was whether Cimarron, which had failed to file an election to withdraw from workers compensation coverage, was subject to the Act.

Cimarron was a corporation engaged in the business of operating a dairy, milking 2,800 to 2,900 cows daily. Cimarron employed

approximately 45 people in its dairy operations and had a payroll of approximately $950,000. Cimarron built the dairy in the fall of 1994. To avoid bonding costs during the construction phase, Cimarron acted as the general contractor.

When Cimarron began construction, it purchased a workers compensation policy through its insurance carrier, Farmland Insurance, to cover construction accidents and dairy operation injuries. Cimarron did not file an election with the Director of Workers Compensation (Director) to come within the Act. See K.S.A. 1998 Supp. 44-505. Construction was concluded in January 1996. Because Cimarron no longer intended to be covered by the Act, it allowed its workers compensation policy to lapse in May 1996 and replaced that policy with an accident policy that provided less coverage. Cimarron posted signs at two time clocks for 3 months announcing the change of insurance in Spanish and English. Cimarron did not file an election to withdraw from the Act. See K.S.A. 1998 Supp. 44-505.

Manuel Rivera began employment with Cimarron during construction of the dairy and continued in dairy operations after construction was complete. He sustained an injury during dairy operations on March 19, 1998, well after Cimarron's workers compensation policy had lapsed.

Martin Ortega worked at Cimarron during the time Cimarron carried workers compensation insurance and again after Cimarron allowed the policy to lapse. During his first period of employment, Ortega sustained a work-related injury and received workers compensation benefits. He was injured again during his second period of employment on August 8, 1997. He reported the injury to his supervisors. Ortega was sent to a doctor for treatment. When the doctor failed to receive payment for the treatment, Ortega became aware that Cimarron no longer had workers compensation insurance. (Whether Ortega is entitled to have this medical expense paid under any theory other than Cimarron's status under the Act is not an issue in this case.)

Each worker filed claims for workers compensation. At the workers' hearing for benefits, the administrative law judge (ALJ) found that Cimarron was subject to the Act when it purchased workers

compensation insurance. The ALJ determined that because Cimarron failed to file the statutorily required election to withdraw from the Act, it continued to be subject to the Act even though its workers compensation insurance policy had lapsed. The ALJ entered preliminary orders requiring Cimarron to furnish medical treatment and pay temporary total benefits to the workers. Cimarron appealed to the Board.

Upon review of the preliminary order of the ALJ, the Board found Cimarron was not subject to the Act, and the ALJ was without jurisdiction to award preliminary compensation to the workers. The Board reversed the ALJ, finding that because Cimarron had no workers compensation insurance at the time of the accidents and had not filed an election to be covered by the Act or made a representation to the workers that it was covered by the Act, its workers were not covered under the Act. The workers appealed to the Court of Appeals. The matter was transferred to this court pursuant to K.S.A. 20-3018(c).

## JURISDICTION

Cimarron asserts that under K.S.A. 1998 Supp. 44-534a(a)(2), the Board's finding there was no jurisdiction for the ALJ to enter a preliminary order for compensation is not subject to appellate review. Cimarron notes that an appellate court cannot expand or assume jurisdiction where a statute does not provide it. *Jones v. Continental Can Co.*, 260 Kan. 547, 558, 920 P.2d 939 (1996).

Whether jurisdiction exists is a question of law over which this court's scope of review is unlimited. *In re Marriage of Killman*, 23 Kan. App. 2d 975, 976, 939 P.2d 970 (1997), *rev'd on other grounds* 264 Kan. 33, 955 P.2d 1228 (1998). An objection based on lack of subject matter jurisdiction may be raised at any time, whether it be for the first time on appeal or even upon the appellate court's own motion. *State v. Nelson*, 263 Kan. 115, 116, 946 P.2d 1355 (1997).

An appellate court's jurisdiction to review the Board's order is set out in K.S.A. 1998 Supp. 44-556(a), which provides:

"Any action of the board pursuant to the workers compensation act, *other than the disposition of appeals of preliminary orders or awards under K.S.A. 44-534a*

*and amendments thereto*, shall be subject to review in accordance with the act for judicial review and civil enforcement of agency actions by appeal directly to the court of appeals. Any party may appeal from a final order of the board by filing an appeal with the court of appeals within 30 days of the date of the final order. Such review shall be upon questions of law." (Emphasis added.)

A preliminary award of medical compensation and temporary total disability compensation is an award pending the conclusion of a full hearing on the claim. K.S.A. 1998 Supp. 44-534a(a)(2). Preliminary awards generally are not appealable to the Board. The purpose of foreclosing appeal from a preliminary award or order is to afford the injured employee immediate access to medical and necessary living expenses pending a full hearing.

However, a finding by the ALJ regarding a disputed issue of whether the employee suffered an accidental injury, whether the injury arose out of and in the course of the employee's employment, whether notice was given or the claim timely made, or whether certain defenses apply, is considered jurisdictional and subject to review by the Board. See *Shain v. Boeing Military Airplanes*, 22 Kan. App. 2d 913, 916, 924 P.2d 1280 (1996) (holding that an order denying the Fund's motion to be dismissed from the case was an appealable order subject to judicial review).

Here, there has been a full presentation of the facts regarding jurisdiction. The Board's order dismissing the cases for lack of jurisdiction was a final order. The workers are entitled to request judicial review of a final order. This court has jurisdiction to review the Board's order.

## SUBJECT TO THE ACT

Both parties agree that employees of an employer who does not file a written statement of election, but purchases an insurance policy that provides workers compensation coverage, are subject to protection under the Act. The workers contend that the Board erred in finding that Cimarron was not subject to the Act. Their position is that once Cimarron purchased workers compensation insurance, it elected to become subject to the Act. They contend that once Cimarron was subject to the Act, regardless of its intent

to withdraw, it must file the necessary statutory written withdrawal of its election.

Resolution of the issue requires interpretation of K.S.A. 1998 Supp. 44-505, which provides, in part:

"(a) Subject to the provisions of K.S.A. 44-506 and amendments thereto, the workers compensation act shall apply to all employments wherein employers employ employees within this state except that such act shall not apply to:

(1) Agricultural pursuits and employments incident thereto . . .;

. . . .

"(b) Each employer who employs employees in employments which are excepted from the provisions of the workers compensation act as provided in subsection (a) of this section, shall be entitled to come within the provisions of such act by:

. . . .

*(2) filing with the director a written statement of election to accept thereunder. Such written statement of election shall be effective from the date of filing until such time as the employer files a written statement withdrawing such election with the director. All written statements of election or of withdrawal of election filed pursuant to this subsection shall be in such form as may be required by the director by rules and regulations.*" (Emphasis added.)

We also note that K.S.A. 1998 Supp. 44-532(h)(1) provides that every insurance carrier writing workers compensation insurance for any employment covered under the Act shall file, with the Director or the Director's designee, written notice of the issuance, nonrenewal, or cancellation of a policy or contract of insurance, or any endorsement, providing workers compensation coverage, within 10 days after such issuance, nonrenewal, or cancellation. The filing of its policy providing workers compensation coverage by an insurer satisfies the employer's statutory obligation to provide workers compensation coverage for its employees.

In determining the issue, the Board and this court must look to legislative intent stated in K.S.A. 1998 Supp. 44-501(g), which provides:

"It is the intent of the legislature that the workers compensation act shall be liberally construed for the purpose of bringing employers and employees within the provisions of the Act to provide the protection of the workers compensation act to both."

Legislative intent is to be determined from a general consideration of the entire Act. Effect must be given, if possible, to the entire Act and every part thereof. To this end, it is the duty of the Board and the court, as far as practicable, to reconcile the different provisions so as to make them consistent, harmonious, and sensible. See *Hughes v. Inland Container Corp.*, 247 Kan. 407, 414, 799 P.2d 1011 (1990).

While an administrative agency's interpretation of a statute may be entitled to some deference, the question of whether an agency has erroneously interpreted a statute is a question over which this court has unlimited review. *League of Kansas Municipalities v. Board of Shawnee County Commr's.*, 24 Kan. App. 2d 294, 297, 944 P.2d 172 (1997).

The general statement of law regarding employer elections appears in 6 Larson, Workmen's Compensation Law § 67.13 (1999), which states:

"When acceptance of coverage is presumed by statute in the absence of rejection, the rejection must be in strict conformity with statutory requirements, whether by employer or employee. Certainly a court is not going to go out of its way to find a nonelection of the act by an implication or technicality. But when the question is what will amount to affirmative election of coverage, most courts are less exacting as to formalities, and will accept any realistic evidence of intent to accept coverage, such as actual payment of compensation or the taking out of workmen's compensation insurance."

There are no Kansas cases that have determined our issue. However, in *Cardinale v. Central Portable Heating Co.*, 711 A.2d 1128 (R.I. 1998), the Supreme Court of Rhode Island considered similar facts and issues. In *Cardinale*, the employer was not statutorily subject to the Rhode Island Workers Compensation Act (Rhode Island Act) because it had only two employees. The employer purchased compensation insurance from its insurance agent for the protection of its employees. When the agent received a renewal notice from the insurance company the following year, the agent notified the employer that the policy needed to be renewed. The agent received no response from the employer. The insurance lapsed. A worker suffered a work-related injury shortly after the insurance lapsed. The employer testified that he was unaware that

the insurance had expired. The worker contended that even though the employer had not filed a written statement accepting the provision of the law, the employer's failure to file an election to withdraw defeated the employer's claim that it was no longer subject to the Rhode Island Act.

The Rhode Island statute at issue in *Cardinale* stated:

"Employers exempted by 28-29-7 may come within chapters 29 — 38 of this title by election. The election on the part of the employer shall be made by filing with the director a written statement to the effect that he or she accepts the provisions of those chapters, the filing of which statement shall operate to subject the employer to the provisions of those chapters and all acts amendatory thereof for the term of one year from the date of the filing of the statement, and thereafter, without further act on his or her part, for successive terms of one year each, unless the employer shall, at least sixty (60) days prior to the expiration of that first or any succeeding year file with the director a notice in writing to the effect that he or she withdraws his or her election to be subject to the provisions of those chapters and shall give reasonable notice thereof to his workers; provided, however, that any employer now subject to the provisions of those chapters shall not be required to file a further written statement of acceptance or hereafter post notices of his or her acceptance." R.I. Gen. Law. § 28-29-8 (1998).

The trial judge concluded that the Workers' Compensation Court was without jurisdiction to decide the case since the employer, having fewer than four employees, was not subject to the provisions of the Rhode Island Workers' Compensation Act. The trial judge further determined that there was no evidence that the employer had filed an election to be subject to the provisions of the workers compensation act, despite the employer's stated intentions to provide coverage for its employees by purchasing an insurance policy.

The Appellate Division of the Workers' Compensation Court disagreed with the trial judge's decision and ruled that the employer was subject to the provisions of the act. The court found that because the insurer had sent notice of the employer's insurance coverage to the Director of the Department of Labor, the notice was sufficient to constitute the statutory written election by the employer to be subject to the act. 711 A.2d at 1129-30.

A majority of the appellate court then concluded that since the employer had failed to notify its employees that it was withdrawing

its workers compensation coverage, the withdrawal was not valid and that the employees were, therefore, entitled to benefits. 711 A.2d at 1130. The employer filed a petition for certiorari.

The Rhode Island Supreme Court reversed the appellate court's decision, stating that the statutory scheme for electing to be subject to the act may not be satisfied by inference. It noted that the Rhode Island Act required an employer to submit a written statement electing to accept the provisions of the act, and it was undisputed that no such written statement had been filed by the employer. It concluded that after the insurance policy that provided workers compensation benefits had lapsed, the Workers' Compensation Court lacked jurisdiction to entertain the worker's petition. 711 A.2d at 1130.

The question of whether an employer who fails to file an election to submit to workers compensation is covered by the act has also been addressed in other states in the context of multi-state workers compensation insurance policies. In *Deanhardt v. Deanhardt Masonry Contractors*, 298 S.C. 244, 379 S.E.2d 726 (1989), the claimant contended that the employer elected to be subject to the South Carolina Workers Compensation Act by purchasing a multi-state workers compensation insurance policy. The applicable North Carolina statute stated:

" 'Any person employing employees in the State and exempted from the mandatory provisions of this Title may come in under the terms of this Title and receive the benefits and be subject to the liabilities of this Title by filing with the Commission a written notice of his desire to be subject to the terms and provisions of this Title.' " 298 S.C. at 248 (quoting § 42-1-380, South Carolina Code of Laws, 1976).

The South Carolina court found that the only evidence of the employer's intention to be subject to the act was the employer's multi-state workers compensation insurance policy. The court stated:

"Mere procurement of workers' compensation insurance carrying a multi-state endorsement by an employer does not serve to estop him from denying coverage in South Carolina. Substantial compliance with § 42-1-380 is required before the employer will be estopped from denying coverage under that section. [Citation omitted.] There is no evidence the employer filed a written notice with the com-

mission of his desire to be subjected to the provisions of the Workers' Compensation Act. The circuit court is therefore affirmed." 298 S.C. at 248.

Although the Kansas Workers Compensation Act is to be liberally construed to provide workers compensation coverage, the Kansas Legislature did not adopt a substantial compliance standard for bringing employers within the Act.

Coverage under K.S.A. 1998 Supp. 44-505 is by a written statement of election. K.S.A. 1998 Supp. 44-505 does not provide that an otherwise exempt employer comes under the Act by purchasing insurance. Even by liberally construing the requirements of K.S.A. 1998 Supp. 44-505, it cannot be found that the legislature intended that by purchasing an insurance policy the employer filed an election with the Director to be subject to the Act.

Cimarron did not file a written election to be subject to the Act; therefore, it did not comply with the statutory provision to come within the Act. The Board correctly found that after the employer's workers compensation insurance policy had lapsed, the employer was no longer subject to the Act, and under the circumstances, the ALJ had no jurisdiction to enter a preliminary award to the workers.

The Board's determination that the workers were not covered under the Act is affirmed.