(150 P.3d 316)
No. 95,705

BEVERLY TULL, *Appellee*, v. ATCHISON LEATHER PRODUCTS, INC., *Appellant*, and BERGER COMPANY, INC., *Appellee*, and FIREMAN'S FUND INSURANCE, SUPERIOR NATIONAL INSURANCE COMPANY/RISK ENTERPRISE MANAGEMENT, ST. PAUL FIRE & MARINE INSURANCE COMPANY, CINCINNATI INSURANCE COMPANY, *Appellees*, and COMMERCE & INDUSTRY INSURANCE COMPANY, *Appellant*.

Opinion filed January 12, 2007.

*William G. Belden*, of Rathmel & Belden, L.L.C., of Meriam, for appellants Atchison Leather Products, Inc., and Commerce & Industry Insurance Company.

*Dennis L. Horner*, of Horner & Duckers, Chtd., of Kansas City, Kansas, for appellee Beverly Tull.

*Steven J. Quinn* and *Anne E. Hawley*, of Fox, Stretz & Quinn, of Kansas City, Missouri, for appellees Atchison Leather Products, Inc., and Fireman's Fund Insurance.

*D'Ambra M. Howard* and *Jennifer Arnett*, of Wallace, Saunders, Austin, Brown, & Enochs, Chartered, of Overland Park, for appellees Berger Company, Inc., and Cincinnati Insurance Company.

*Timothy C. Gaarder* and *John R. Emerson*, of McAnany, Van Cleave & Phillips, of Kansas City, Kansas, for appellees Atchison Leather Products, Inc., and Superior National Insurance Company/Risk Enterprise Management.

*Katharine M. Collins*, of Law Offices of Daniel P. Hanson, of Overland Park, for appellees Atchison Leather Products, Inc., and St. Paul Fire & Marine Insurance Company.

Before GREENE, P.J., CAPLINGER, J., and LARSON, S.J.

GREENE, J.: Atchison Leather Products, Inc. (Atchison), and Commerce & Industry Insurance Company (C & I) appeal the decision of the Workers Compensation Board (Board) awarding Beverly Tull certain benefits under the Workers Compensation Act, K.S.A. 44-501 *et seq*. They argue that (i) the Board erred in holding multiple carriers jointly and severally liable for medical expenses and temporary total disability benefits; (ii) the Board erred in its findings and conclusions regarding Tull's injury date; and (iii) the Board erred in endorsing a late amendment to Tull's application for benefits. We disagree and affirm the Board's decision.

## *Factual and Procedural Background*

Tull was employed by Atchison since 1989 and began having hand, wrist, and shoulder pain in the fall of 1999. She was referred to a physician who noted in April 2000 that her carpal tunnel syndrome was "severe enough" for surgery. In June 2000, the physician sent a letter to Atchison stating:

"[Tull] expressed to me that her shoulder is actually hurting more than her hands, and she has been anxious to have her carpal tunnel released since very early this year. However, she seems to be somewhat of a silent sufferer and has been willing to hold off on surgical intervention. Now that she is hurting worse, she would like to go ahead and proceed, but we are having trouble with insurance coverage.

"It is my distinct impression that she has a continuation of her bilateral carpel tunnel syndrome to the point that the right side now hurts as much as the left. There have been no new injuries, and she has used an extra dose of Celebrex to control her pain so she can get some sleep at night. She has a case of gradual progression of her symptoms or a continuation thereof without a specific new injury."

Tull filed her application for hearing under K.S.A. 44-534 in August 2000, designating her date of injury as September 8, 1999. In September 2000, the administrative law judge (ALJ) was informed that Tull had yet to receive the care recommended by Atchison's designated treating physician due to a dispute between Atchison's insurance carriers. This dispute resulted from Atchison's annual change in insurance carriers; ultimately four carriers provided coverage to Atchison during the course of this litigation: Fireman's Fund Insurance (Fireman's) provided coverage from November 1998 through November 1999, Superior National Insurance Company/Risk Enterprise Management (Superior/REM) provided coverage from November 1999 through November 2000, St. Paul Fire & Marine Insurance Company (St. Paul) provided coverage from November 2000 through November 2001, and C & I provided coverage from November 2001 through November 2002. The dispute among these carriers predominated the entire administrative proceeding and resulted in persistent delays in Tull's treatment and in the payments of expenses and compensation benefits.

At a preliminary hearing in November 2000, neither Fireman's nor Superior/REM would authorize treatment for Tull, so the ALJ ordered medical expenses paid by both carriers and Atchison, stating:

"I would hope that the carriers would find it more expedient to somehow decide on an agreeable split of Dr. Shriwise's bill which can be then adjusted in the final award in this matter as opposed to spending months in the district court over a relatively minor matter, but that's up to the carriers and the depth of their pocket books."

Tull underwent a left carpal tunnel release surgery on December 11, 2000, and returned to work approximately 6 weeks later on January 23, 2001; she never received any wages, however, throughout this entire period of time.

At a February 7, 2001, hearing, neither the surgeon's bill nor the hospital bill had been paid. Tull requested the ALJ order temporary total disability (TTD) from December 11, 2000, through January 23, 2001. After joining other carriers, the ALJ ordered Superior/REM and Atchison to pay Tull TTD at the rate of $195.68 per week for the period from December 11, 2000, to January 22, 2001. Also discussed in the ALJ's order was the carriers' "callous disregard for the welfare of the Claimant and to instead bicker over which carrier is responsible for providing temporary benefits." The ALJ relied on *Lott-Edwards v. Americold Corp.*, 27 Kan. App. 2d 689, 6 P.3d 947 (2000), and *Surls v. Saginaw Quarries, Inc.*, 27 Kan. App. 2d 90, 998 P.2d 514 (2000), in finding Superior/REM liable for the TTD.

In April 2002, that segment of Atchison employing Tull was purchased by Berger Company, Inc. (Berger), which was insured by Cincinnati Insurance Company (Cincinnati). Tull was still having severe pains in her left hand and amended her application to include Berger. She was seen by Dr. Edward J. Prostic in July 2002, who reported:

"Tull sustained repeated minor trauma to her upper extremities. She has had development of recurrent left carpal tunnel syndrome. She continues with rotator cuff irritability of the right shoulder, perhaps secondary to instability, and has osteoarthritis of the left shoulder. She should not return to duties that require repetitious forceful gripping left-handed, more than minimal use of the hand in

the flexed wrist position, and should avoid repetitious forceful pushing or pulling or more than minimal use of her hands above shoulder height. Permanent partial impairment is rated at 18 percent of the right upper extremity and 30 percent of the left upper extremity, for combined impairment of 27 percent of the body as a whole on a functional basis."

Dr. Prostic stated that Tull had suffered repeated minor trauma or microtraumas since her initial injury.

Following the first day of testimony before the ALJ in February 2004, and at the implied suggestion of the ALJ, Tull amended her application to expand the dates of her injuries and to include both Atchison and Berger together with all pertinent insurance carriers; until this belated amendment, C & I had not been a party to the proceedings.

On May 3, 2005, the ALJ found Superior/REM responsible for costs of the carpal tunnel surgery and the TTD. The costs of "all other treatments and TTD benefits are the responsibility of the carrier who had coverage on the date(s) [when] such expenses were incurred, except the cost of Dr. [Theodore L.] Sandow's IME [independent medical examination] should be shared equally by all carriers." Atchison and Superior/REM were ordered to pay TDD of $1,229.28; Atchison and C & I were ordered to pay Tull permanent partial disability compensation totaling $17,855.29. Upon payment of their shares of the assessed costs, Berger and all the insurance carriers except C & I were dismissed with prejudice as parties.

Atchison and C & I filed a timely application for review before the Board. The Board noted, upon its review:

"No one disputed her need for treatment or the causal connection between her symptoms and her work activities. Rather, it was merely a fight as between two companies that had contractual obligations to insure Atchison for workers compensation claims and their desire to avoid that liability, effectively delaying treatment with the obvious goal of depositing the liability on the subsequent carrier's doorstep."

The Board resolved the "hotly contested issue" of date of injury by applying the last-day-worked rule and by concluding Tull's date of injury was her last day worked with Atchison on April 23, 2002. It also rejected claims that Tull's amended application violated the

due process of C & I. Ultimately, the Board awarded Tull TTD compensation of $2,282.36 to be paid by all the carriers jointly and severally. The Board reasoned:

"Where, as here, there is no dispute as to the compensability of claimant's claim, each carrier identified in the litigation should be found jointly and severally liable for the temporary total disability benefits and medical expenses incurred during the course of the claim. While this may result in some accounting challenges and possibly arbitration or additional litigation in the district courts, that concern has no place in this litigation. Rather, the focus here is to rule upon the compensability of claims as opposed to the relative liabilities of the competing carriers. This approach will, in the Board's view, allow the orderly procession of compensable claims, leaving the carriers to fight their battles in another forum, leaving the claimant alone to heal and hopefully return to work.

"The ALJ's Award is hereby modified to find each of the carriers jointly and severally liable for all of claimant's medical expenses and temporary total disability benefits as well as the costs associated with the independent medical examination, except that Berger and its carrier are solely responsible for the medical expenses and temporary total disability benefits accruing during its coverage period."

Based upon its conclusion as to date of injury, the Board ordered permanent partial disability to be paid by Atchison and C & I in the amount of $17,855.29 for 21 percent permanent partial disability to the whole body. Berger and its carrier, Cincinnati, were also assessed liability for this 21 percent whole body functional impairment, but the Board noted that Berger was entitled to a credit for claimant's preexisting impairment. Atchison and C & I appeal, and all carriers filed briefs on appeal.

### Did the Board Err in Holding All Insurance Carriers Jointly and Severally Liable for Medical Expenses and Temporary Disability Benefits?

On appeal, Atchison, C & I, Fireman's, and Superior/REM argue that the Board abdicated its responsibility to determine the individual liability of each respective carrier, suggesting that the Board's order of joint and several liability for temporary benefits and medical expenses "is contrary to the rule from *Lott-Edwards v. Americold Corp.*, 27 Kan. App. 2d 689, 6 P.3d 947 (2000)."

Our review of the Board's order is governed by K.S.A. 77-621. To the extent that the parties suggest that the Board has erroneously interpreted or applied the law, we have unlimited review.

K.S.A. 77-621(c)(4); see *Woodward v. Beech Aircraft Corp.*, 24 Kan. App. 2d 510, 515, 949 P.2d 1149 (1997).

Interestingly, none of the parties have cited statutory authority addressing a procedure for the apportionment of liability among insurance carriers (other than the Workers Compensation Fund [Fund], K.S.A. 44-569) within the Workers Compensation Act, nor can we ascertain that there is any such authority. Our appellate courts, however, have faced this issue on several occasions, and the parties direct our attention to these authorities in resolving the issue framed.

In perhaps the most definitive statement by our Supreme Court on the subject, it has been held that disputes between contending insurance carriers concerning their respective liabilities for the payment of compensation awarded to an injured worker employed by their insured should not be litigated in the compensation proceedings themselves, but in separate proceedings between the carriers brought for such purpose. *Kuhn v. Grant County*, 201 Kan. 163, Syl. ¶ 3, 439 P.2d 155 (1968). In so holding, the court relied upon several other authorities from within and beyond Kansas and reasoned:

"The present action presents a graphic illustration of the hardship which may confront a claimant where insurance carriers are permitted to litigate, during the compensation process, claims and equities existing between themselves. . . .

"These are adversities which a claimant should not be forced to undergo. While we recognize the right of insurance carriers to be protected in their legal rights and to engage in litigation when disputes over their respective liabilities arise between them, yet their quarrels should not be resolved at the expense of an injured workman." 201 Kan. at 171-72.

The rule of *Kuhn* is neither novel nor isolated. See, *e.g.*, *Hobelman v. Krebs Construction Co.*, 188 Kan. 825, 830-33, 366 P.2d 270 (1961) (where employee of two employers is injured, degrees of liability between employers and their carriers not to be decided in workers compensation proceedings); *Attebery v. Griffin Construction Co.*, 181 Kan. 450, 460, 312 P.2d 598 (1957) (carrier may not draw in another employer and its carrier and litigate rights not relative to rights of claimant); *American States Ins. Co. v. Hanover Ins. Co.*, 14 Kan. App. 2d 492, 498, 794 P.2d 662 (1990) (insurance

companies may not litigate in the workers compensation proceedings their respective liabilities for an award if the employee's interests are not at issue). We also note that the Board cited numerous administrative decisions for a "minority view" embracing and applying the *Kuhn* doctrine.

Despite the rather clear holding of *Kuhn*, the insurers here argue that recent decisions of this court have undertaken or affirmed an apportionment of insurer liability. Chief among these authorities is *Lott-Edwards*, where a panel of this court (i) affirmed the Board's division of responsibility between insurers for temporary and permanent disability benefits; and (ii) affirmed the denial of an insurer's claim for reimbursement against the Fund. We conclude, however, that *Lott-Edwards* is not contrary to the Supreme Court's holding in *Kuhn*; in fact, we do not believe that the issue before the court in *Kuhn* or before us here was framed for the court in *Lott-Edwards*.

The issue before the court in *Lott-Edwards* was whether the last-day-worked rule crystallized in *Treaster v. Dillon Companies, Inc.*, 267 Kan. 610, 987 P.2d 325 (1999), should require the insurer providing coverage on the last day worked by the employee to reimburse a prior insurer for temporary compensation benefits previously paid under preliminary decisions of an ALJ. The Board and this court held that such reimbursement was inappropriate because the last-day-worked rule "was not crafted to excuse an insurance company from liability for benefits paid during its coverage period." 27 Kan. App. 2d at 697. The Board and this court also held that there was no right of reimbursement from the Fund. 27 Kan. App. 2d at 698-99; see K.S.A. 44-534a(b) and K.S.A. 44-567(a)(2). It is clear to us that neither the Board nor the court in *Lott-Edwards* was faced with multiple carriers that had potential liability for temporary disability and ongoing medical expenses, and the issue of reimbursement from the Fund was based upon statutes that are simply not applicable when the Fund is not involved. See K.S.A. 44-534a(b) and K.S.A. 44-567(a)(2).

Atchison and C & I also cite and rely on *Helms v. Tollie Freightways, Inc.*, 20 Kan. App. 2d 548, 889 P.2d 1151 (1995), arguing that this court endorsed in that case a determination by the Board

of "which carrier is on the risk." We concede that the *Helms'* panel reviewed *Kuhn* and other cases that established the general rule against insurance companies litigating their respective liabilities in the workers compensation proceedings. The panel then apparently concluded that, despite the general rule, both the ALJ and the Board had *jurisdiction* to determine which of two insurance carriers before them had coverage of the accident. 20 Kan. App. 2d at 556. We do not view *Helms* as *requiring* any apportionment of insurance carrier liability, only as *authorizing* such determinations under the circumstances of that case. When an ALJ or the Board embraces the general rule of *Kuhn*, we certainly do not believe this constitutes an erroneous application of law.

Here, the ALJ and the Board were faced with precisely the circumstances that led to the general rule of *Kuhn*: the mere tail of insurance coverage disputes wagging the dog of the rights of an injured worker. As stated eloquently by the Board:

"[Claimant's] entitlement to the medical treatment and temporary total disability benefits was uncontested. It is clear from the transcript that claimant was falling victim to a dispute between insurance carriers. No one disputed her need for treatment or the causal connection between her symptoms and her work activities. Rather, it was merely a fight as between two companies that had contractual obligations to insure Atchison for workers compensation claims and their desire to avoid that liability, effectively delaying treatment with the obvious goal of depositing the liability on the subsequent carrier's doorstep.

. . . .

"Th[is] case illustrates the quagmire that develops when, as here, there are multiple carriers, even multiple employers, both involving the same claimant and the performance of substantially the same job activities over a period of time. . . .

. . . .

"[A]s coverage passed from one carrier to another, claimant and to a certain extent Atchison, were caught up in the coverage vortex. Neither Fireman's nor Superior wanted to provide the treatment *which no one disputed she required and was due to her work activities*, leaving her no other alternative but to hire counsel. The obvious motivation for the carriers' positions was the fact that every November, coverage would change. And at that point, claimant—and hopefully her claim—would become another carrier's problem."

We recognize that joint and several liability may create some initial inequities and require separate litigation between carriers that may not be the most efficient. See *Forcade v. List & Clark*

*Construction Co.*, 172 Kan. 119, 122, 238 P.2d 549 (1951) (legislature undertook to cover every phase of the right to compensation and necessary procedures within the Workers Compensation Act). We note, however, that the legislature has expressly acknowledged that remedies related to collection and enforcement of a workers compensation award may require separate proceedings in district court, and the referral of disputes among insurers under the circumstances of this appeal for determination by a court is consistent with this statutory acknowledgment. See K.S.A. 44-512a(b) and (c); KBA Kansas Workers Compensation Handbook, § 14.04 C (4th ed. 1998).

Our Supreme Court in *Kuhn* clearly mandated that such insurance carrier disputes must not be allowed to vex the speedy and efficient mechanism for the treatment and payment of the claims of injured workers provided by our Workers Compensation Act. Perhaps the prospect of joint and several liability may serve as an incentive to multiple carriers to resolve coverage disputes in a manner that will not delay treatment of an injured worker or otherwise impede the paramount objective of the Workers Compensation Act. We conclude that the Board did not erroneously construe or apply Kansas law in its order of joint and several liability of multiple insurers for temporary disability and medical benefits.

### *Was There Substantial Competent Evidence to Support the Board's Finding That Atchison and C & I Should Be Responsible for Permanent Partial Disability Benefits?*

Atchison and C & I next argue that there was no substantial competent evidence supporting a date of injury of April 23, 2002, the date Tull last worked for Atchison. We review the Board's findings of fact to determine whether they are supported by evidence that is substantial when considered in light of the record as a whole. K.S.A. 77-621(c)(7). Issues of law are subject to de novo review. *Woodward*, 24 Kan. App. 2d at 515.

The Board affirmed the ALJ's finding regarding the proper date of accident. The ALJ found that Tull's date of accident was her last date of work with Atchison as there was no attenuating event while claimant worked for Berger. The ALJ further found:

"[Tull's] duties at Berger were substantially less demanding than she had had at Atchison, she was allowed to rotate on tasks, there was no further treatment, and there is no evidence her condition worsened although it did remain symptomatic—as it probably will for the rest of her life regardless of her activities."

Atchison and C & I argue that Tull was not examined by physicians Prostic or Sandow until dates *after* her last day of work for Atchison and that neither physician issued an opinion apportioning Tull's permanent impairment between the two periods of employment. Nevertheless, Dr. Prostic opined that claimant sustained repeated minor trauma to her upper extremities during her employment with Atchison through December 2000, and Atchison was fully aware of Tull's medical problems during her employment and selected the physician who diagnosed her injuries and performed two surgeries. We conclude that there is ample evidence to support the finding that the date of injury was during Tull's employment at Atchison.

Atchison and C & I also argue, however, that the Board erroneously applied the rules for determining the date of accident for repetitive-use injuries, citing *Treaster*, 267 Kan. at 623-24 and *Berry v. Boeing Military Airplanes*, 20 Kan. App. 2d 220, 228-30, 885 P.2d 1261 (1994). We disagree. It is clear that the Board embraced the rules in both *Treaster* and *Berry* and correctly applied the rules to the facts before it. The Board stated:

"There appears to be a connecting thread between the decisions beginning with *Berry* that address the date of accident issue in cases involving injuries from repetitive trauma. . . . A claimant's last injurious exposure to repetitive or cumulative trauma is when he or she leaves work. But when the claimant does not leave work or leaves work for a reason other than the injury, then the last injurious exposure is when the claimant's restrictions are implemented and/or the job changes or job accommodations are made by the employer to prevent further injury. [Citing *Treaster*.]

. . . .

"The Board concludes that claimant suffered a series of injuries to her upper extremities each time she returned to the same job (with Atchison) she had performed before her various treatments and surgeries. Because claimant continued to aggravate her condition after each surgery, the last day worked rule is applicable. [Citing *Lott-Edwards*.] Thus, the ALJ's conclusion that April 23, 2002 was claimant's date of accident is affirmed. Claimant's last date of work, her attenuating event was her leaving Atchison's employ."

We conclude that the Board's application of *Treaster* and *Berry* to these facts was correct. Here, the Board found that Tull's employment tasks at Berger were less demanding and less stressful; thus, her last day of work for Atchison was indeed the "last day the claimant performed the earlier work tasks" under *Treaster*. The Board's conclusion was supported by sufficient evidence and was not erroneous as a matter of law.

### *Did the ALJ or the Board Abuse Its Discretion in Allowing Tull to Amend Her Application after the Terminal Date Under K.S.A. 44-523(b)?*

Atchison and C & I next argue that the ALJ and Board failed to follow prescribed procedure and violated their due process by allowing a belated amendment by Tull to her application for benefits in order to expand her injury date and name an additional insurer. The amendment was allowed after the first regular hearing on February 26, 2004, which date had been established as the claimant's terminal date under K.S.A. 44-523(b).

Terminal dates as defined by and set under K.S.A. 44-523(b) can be extended by agreement of the parties or by reason of specific statutory exceptions, which include "for good cause shown." The granting of an extension of the terminal dates for good cause shown carries a discretionary review similar to the granting or denying of a motion for a continuance. Such a ruling is discretionary and will not be disturbed on appeal unless there is a clear showing of an abuse of discretion. *Surls v. Saginaw Quarries, Inc.*, 27 Kan. App. 2d 90, 96-97, 998 P.2d 514 (2000).

Here, there can be no question about good cause for the extension. After the first day of claimant's testimony, the ALJ sent a letter to all parties noting that "it [would] appear there is an argument the date of accident is the Claimant's last day with Atchison," but none of the counsel present "represented the carrier which had coverage for that day." In response within 10 days thereafter, Tull filed her motion to amend. Moreover, the Board noted that, at oral argument, "[C]ounsel for [C & I] was unable to identify any avenue of discovery that he was unable to pursue due to his belated inclusion in the litigation." We conclude that there was no

abuse of discretion in the ALJ's order allowing the belated amend-
ment to Tull's application.

Atchison and C & I also argue, however, that they have been
denied due process by reason of the late amendment. The Board
rejected this argument on the basis that an insurance carrier has
no separate right of procedural due process flowing from the pro-
visions of the Workers Compensation Act, citing K.S.A. 40-2212,
K.S.A. 44-520, and K.S.A. 44-520a. We agree, embracing the rea-
soning of our colleagues on the panel in the *Lott-Edwards* case:

> "Travelers argues its due process rights were violated because its retained at-
> torney was denied the opportunity to confront witnesses who had previously tes-
> tified before Travelers entered the fray. The law does not favor Travelers' argu-
> ment. It is the employer, Americold, that is entitled to notice and receipt of a
> written claim, not its insurance company. See K.S.A. 44-520; K.S.A. 44-520a. It
> is the employer that must be given proper notice and an opportunity to be heard
> and defend against a claim; *the insurance company has no separate right of pro-
> cedural due process flowing from provisions of the Workers Compensation Act.*
> See *Landes v. Smith*, 189 Kan. 229, 235, 368 P.2d 302 (1992)." (Emphasis added.)
> 27 Kan. App. 2d at 696-97.

We reject Atchison and C & I's claim of due process violation
on the same basis as did the Board.

In summary, we conclude: (i) The Board did not commit legal
error in holding all carriers jointly and severally responsible for
temporary disability and medical expenses; (ii) there was sufficient
evidence to support the Board's order holding Atchison and C &
I responsible for Tull's permanent partial disability award; and (iii)
neither the ALJ nor the Board abused its discretion by allowing
the belated amendment of Tull's application, and there was no due
process violation by reason of the amendment.

Affirmed.