NOT DESIGNATED FOR PUBLICATION

No. 115,195

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

JEROLD L. LAMB, (Deceased),
*Appellee,*

v.

SOUTHWEST COMMODITIES, LLC,
*Appellee,*

and

RIVERPORT INSURANCE CO.,
*Appellant.*

MEMORANDUM OPINION

Appeal from Workers Compensation Board. Opinion filed January 27, 2017. Vacated and remanded.

*Douglas M. Greenwald* and *Eric T. Lanham*, of McAnany, Van Cleave & Phillips, P.A., of Kansas City, for appellant.

No appearance by appellees.

Before BRUNS, P.J., POWELL, J., and STUTZMAN, S.J.

STUTZMAN, S.J.:  Jerold L. Lamb (Jerold) drove for Southwest Commodities, LLC (Southwest), a trucking company, and he died in the course of that employment. Jerold's wife, Gayle Lamb (Gayle), filed a claim against Southwest for death benefits under the Workers Compensation Act (Act). As that claim was processed, Riverport Insurance Company (Riverport) disputed Southwest's claim that it had a workers compensation

policy through Riverport in effect on the date of Jerold's accidental death. An administrative law judge (ALJ) awarded Gayle death benefits and resolved the disputed issue with a finding that Riverport was Southwest's insurer on the date of Jerold's death.

On review, the Kansas Workers Compensation Board (Board) dismissed the appeal of the ALJ's award, concluding that both the ALJ and the Board lacked subject matter jurisdiction to address the insurance coverage dispute. The Board found that the ALJ's determination that Riverport was Southwest's insurer on the date of Jerold's accidental death was void and ruled that resolution of any insurance coverage dispute between Southwest and Riverport required a decision from a district court. The Board also specified that the ALJ's award against Southwest and Riverport for payment of benefits would be "left undisturbed" by its order.

Riverport appeals the Board's conclusion that the existence of coverage could not be decided in workers compensation proceedings. Alternatively, Riverport argues if the Board's jurisdiction conclusion was correct, it necessarily erred when it left the ALJ's death benefits award undisturbed. We find the conclusion that the ALJ and the Board lacked subject matter jurisdiction to decide and review the coverage question was incorrect. Therefore, we vacate the Board's dismissal of Riverport's appeal from the order entered by the ALJ and do not reach Riverport's alternative argument.

FACTS AND PROCEDURAL BACKGROUND

Eric Kramer owned both Southwest and Kramer Harvesting, organized as separate limited liability companies although they used the same physical mailing address and post office box. Robert Brown (Brown) worked for both companies. Brown was in charge of maintaining workers compensation insurance for both Southwest and Kramer Harvesting. On June 10, 2013, Brown contacted private insurance agent Chris Gall to

obtain insurance for both Southwest and Kramer Harvesting. Gall listed the business seeking insurance as "Kramer Harvesting LLC Southwest Commodities LLC."

On June 27, 2013, Berkley Assigned Risks Services (Berkley), which administers workers compensation insurance for Riverport, mailed a workers compensation assigned risk policy to the post office box address for the companies. The policy listed "Kramer Harvesting LLC Southwest Commodities LLC" as the insured. Subject to cancellation, this policy was to remain in effect from June 11, 2013, to June 11, 2014. For that policy, Berkley also hired a third-party auditor to complete a preliminary audit of Southwest and Kramer Harvesting. The auditor sent the completed preliminary audit to Berkley on October 22, 2013. On October, 16, 2013, however, the insurance policy for Southwest and Kramer Harvesting had been canceled for nonpayment of the premium.

Southwest and Kramer Harvesting paid the outstanding premium and Berkley reinstated their policy, but it bore a new number as a reinstated policy. In the interval between October 16, 2013, and October 21, 2013, there was a lapse of coverage. As Berkley explained it, although the coverage was reinstated, the policy was technically new because of the lapse. Berkley mailed Southwest and Kramer Harvesting their new reinstated workers compensation assigned risk policy plan on October 23, 2013.

The lapse in coverage triggered a requirement for Southwest and Kramer Harvesting to undergo a "final premium audit" on the original policy that had been canceled for nonpayment. Berkley contacted the auditor to complete the final premium audit on October 24, 2013, just 2 days after the auditor had submitted the preliminary audit to Berkley. The auditor later reported to Berkley that reasonable efforts to set up the audit with Southwest and Kramer Harvesting were unsuccessful, so she was unable to complete the final premium audit. Because of the reported lack of cooperation for a final premium audit, Berkley sent notice of cancellation of the reinstated policy, effective December 25, 2013, at 12:01 a.m. Berkley sent the cancellation notice, addressed only to

Kramer Harvesting, to the post office box for the companies. The cancellation notice eventually was returned to Berkley as unclaimed.

On January 16, 2014, while driving a Southwest Commodities truck, Jerold was involved in a multi-vehicle crash and died at the scene of the accident. On January 28, 2014, Brown filed an accident report with the Division of Workers Compensation, listing Berkley as its insurance carrier. Several days later, Jerold's surviving spouse, Gayle, filed an application for hearing with the Division claiming she was entitled to death benefits.

Although it initially provided counsel for Southwest, Riverport denied that "Kramer Harvesting dba Southwest Commodities, LLC" had workers compensation insurance on the date of Jerold's death because it had canceled the reinstated policy on December 25, 2013. Southwest contended it had insurance through Riverport on the date of Jerold's death, and asserted that it "was in compliance with all material terms and conditions of the Riverport policy" at all material times because it had cooperated fully with Riverport's audit requests, and it continued to receive documents from Riverport after Riverport alleged that it had canceled the workers compensation insurance policy.

Based on the conflicting claims by Riverport and Southwest that introduced the possibility Southwest may not have been insured, Gayle moved to implead the Workers Compensation Fund (Fund) into the proceedings. Southwest stipulated to the fact that it was insolvent and unable pay any death benefits award if the ALJ determined it did not have insurance through Riverport on the date of Jerold's death. Furthermore, all the parties stipulated before the ALJ that: Jerold was employed by Southwest; his death occurred by accident that arose out of and in the course of his employment with Southwest; his death was covered under the Act; and the amount of benefits owed was undisputed, none of which had been paid to the surviving spouse at that point.

4

During the proceedings ahead of the ALJ's final ruling, Gayle requested an order for the Fund to begin paying Jerold's death benefits to her. She argued that the Fund could seek repayment from either Southwest or Riverport once the ALJ reached a decision on the coverage question. On January 7, 2015, over the Fund's objection, the ALJ ordered the Fund to begin paying death benefits to Gayle in the amounts the parties had agreed.

As made evident by the wide-ranging stipulations, the parties were of the same mind in almost all respects. The sole disputed question was whether Riverport was the workers compensation insurer for Southwest on the date of Jerold's death. Riverport argued that it had properly canceled Southwest's policy prior to the date of the fatal work accident. Southwest responded that Riverport "failed to effectuate a valid cancellation" of the insurance policy.

The ALJ analyzed the evidence, law, and arguments and found that because the policy was not canceled in the manner required, Riverport was Southwest's insurer for this claim. An award of compensation in the amounts the parties had agreed, therefore, was entered against Southwest, as employer, and Riverport, as Southwest's insurer.

Riverport filed an application for review with the Board, claiming that it had "properly and effectively" canceled the policy. Riverport and Southwest filed briefs in which they repeated their arguments previously presented to the ALJ. The Fund filed a brief adopting Southwest's arguments.

In its order issued after considering the briefs and oral arguments, the Board held that the ALJ incorrectly undertook to decide the insurance coverage question for which there was no subject matter jurisdiction in a proceeding under the Act. The Board found that if the coverage dispute were to be litigated, it must be done in the district court. The

5

Board specifically ordered that "[t]he ALJ's order of benefits against respondent [Southwest] and insurance carrier [Riverport] is left undisturbed by our conclusion."

Riverport timely appeals the Board's order and is the only party to brief the issues before us.

ANALYSIS

*Standard of Review*

Subject matter jurisdiction is the power of a court or agency to hear and decide a case. See *Grajeda v. Aramark Corp.*, 35 Kan. App. 2d 598, 603, 132 P.3d 966 (2006). "Whether jurisdiction exists is a question of law over which this court's scope of review is unlimited." *Rivera v. Cimarron Dairy*, 267 Kan. 865, 868, 988 P.2d 235 (1999). Issues regarding subject matter jurisdiction may be raised at any time or upon a court's own motion. 267 Kan. at 868.

The basis for review of decisions from the Board was summarized recently by our Supreme Court:

"The Workers Compensation Board's decision is subject to appellate review under the Kansas Judicial Review Act, K.S.A. 77-601 *et seq.* K.S.A.2014 Supp. 44–556(a). Relief may be granted if the Board erroneously interpreted or applied the law. K.S.A.2014 Supp. 77–621(c)(4). Whether the Board properly interpreted and applied K.S.A.2010 Supp. 44–501(h) is a question of law subject to de novo review. See *Whaley v. Sharp,* 301 Kan. 192, 196, 343 P.3d 63 (2014)." *Hoesli v. Triplett, Inc.*, 303 Kan. 358, 362, 361 P.3d 504 (2015).

*Discussion*

The Board's order pointed to a line of appellate cases it interpreted, as a matter of jurisdiction, to preclude consideration of any question of insurance coverage in a workers

6

compensation proceeding. First among those cases was *American States Ins. Co. v. Hanover Ins. Co.*, 14 Kan. App. 2d 492, 794 P.2d 662 (1990), a decision of this court on an interlocutory appeal. As cited by the Board, that court held: "Unless specifically allowed by statute, insurance companies may not litigate in the workers compensation division their respective liability for an award if the employee's interests are not at issue." 14 Kan. App. 2d at 498.

The Board next offered support for its conclusion through excerpts from *Mitchell v. Petsmart, Inc.*, 291 Kan. 153, 239 P.3d 51 (2010); *Kuhn v. Grant County*, 201 Kan. 163, 439 P.2d 155 (1968); *Landes v. Smith*, 189 Kan. 229, 368 P.2d 302 (1962); and *Hobelman v. Krebs Construction Co.*, 188 Kan. 825, 366 P.2d 270 (1961). The Board also referenced *Tull v. Atchison Leather Products, Inc.*, 37 Kan. App. 2d 87, 150 P.3d 316 (2007), and interpreted it to be consistent with the principles established in the other cases. We do not need to review each of these. *Mitchell*, however, is not only the most recent of the cases, but it is representative of the others and incorporates their holdings on this question.

In *Mitchell*, the claimant worker made two claims for related, but separate, work injuries. The facts were complicated further by the employer's change of workers compensation insurers between the two injuries and the claimant's assertion that the way he performed his work after the first injury gave rise to the second claim. The ALJ consolidated Mitchell's two claims and, as might be expected, the relative liability of each insurance carrier for these interconnected claims was a part of the dispute. 291 Kan. at 157. The ALJ made the two insurers jointly and severally liable, commenting that: "'The law is clear that if [insurance carriers] have a disagreement among themselves as to who the responsible carrier is, that should be decided in the District Court . . . [because] we are not authorized to make that determination in the Comp Court." 291 Kan. at 158-59.

7

On review of the ALJ's award to Mitchell, the Board concurred with the order to impose liability on both insurers, jointly and severally.

The Supreme Court found no fault in how the ALJ and the Board addressed the issue of Petsmart's two insurers:

> "[W]e agree generally with the notion expressed by the ALJ and in the case law that insurance carriers should not litigate disputes about their respective liabilities for the compensation awarded to an injured worker in the compensation proceedings. Instead, these matters should be decided in separate proceedings between the carriers brought for such purposes and outside the Board's jurisdiction. See *Kuhn v. Grant County,* 201 Kan. 163, Syl. ¶¶ 3-5, 439 P.2d 155 (1968) (discussing the hardship that may confront a claimant when insurance carriers litigate claims and equities existing between themselves during the injured worker's compensation process); *Hobelman v. Krebs Construction Co.,* 188 Kan. 825, 830-33, 366 P.2d 270 (1961) (where employee of two employers is injured, degrees of liability between employers and their carriers are not to be decided in workers compensation proceedings); *Tull v. Atchison Leather Products, Inc.,* 37 Kan. App. 2d 87, 93-94, 150 P.3d 316 (2007) (not an erroneous application of law when an ALJ or the Board embraces the general rule stated in *Kuhn*)." 291 Kan. at 174.

In the present case, the Board reached its conclusion by reading these cases as declarations that there was no jurisdiction to consider any coverage questions that might be raised within the workers compensation process. When two or more insurers are disputing their relative allocation of responsibility for payment of an award, we agree that the cases do prescribe a preference for deciding those questions outside the compensation process. We note, however, that in *Mitchell* our Supreme Court's passing reference to this question was not phrased in prohibitive jurisdictional terms, but with a comment that the court "agree[d] generally" with the "notion" that insurers "should not" litigate their disputes over allocation of liability within the forum of compensation proceedings. 291 Kan. at 174.

8

Over 50 years, through numerous statutory iterations, both our Supreme Court and this court have expressed the general view that multiple insurers disputing only their relative liability for an award should do so on their own time, at their own cost, and in district court. The cases on which the Board relies, however, do not support its finding that an ALJ has no *jurisdiction* to consider the issue when an insurer and an employer dispute the existence of coverage for a claim.

The legislature is the source of jurisdiction for administrative law judges. The current legislative grant of jurisdiction is provided in K.S.A. 2015 Supp. 44-551:

> "Administrative law judges shall have power to administer oaths, certify official acts, take depositions, issue subpoenas, compel the attendance of witnesses and the production of books, accounts, papers, documents and records to the same extent as is conferred on the district courts of this state, and may conduct an investigation, inquiry or hearing on all matters before the administrative law judges. All final orders, awards, modifications of awards, or preliminary awards under K.S.A. 44-534a, and amendments thereto, made by an administrative law judge shall be subject to review by the workers compensation appeals board." K.S.A. 2015 Supp. 44-551(l)(1).

In this case, Southwest contended it had the benefit of coverage for Jerold's accidental death. Riverport argued it had no coverage obligation to Southwest on that date. Administrative law judges may properly consider "all matters" before them. Giving the statute's words their common meaning, we find the legislature conferred jurisdiction on the ALJ that clearly encompassed the coverage question between Southwest and Riverport. That dispute was an integral part of the "matter" before the ALJ. Correspondingly, the Board had jurisdiction to review the ALJ's decision on that issue.

Finally, and more narrowly, we note as well the implication of K.S.A. 2015 Supp. 44-532a to the facts of this case. Based on the insolvency of Southwest, the Workers Compensation Fund (Fund) was brought into the case. Based on a stipulation and

9

presentation by counsel, the ALJ made a preliminary finding of insolvency to support an order for payment of the lump sum death benefits and commencement of other benefit payments, pending resolution of the coverage question. As the parties noted before the ALJ considering the temporary order, the Fund has statutory authority to recover its expenditures in the event Riverport is found to have had coverage in effect.

*Conclusion*

The Board's order was an erroneous interpretation or application of K.S.A. 2015 Supp. 44-551(l)(1), warranting relief under the terms of the Kansas Judicial Review Act. K.S.A. 2015 Supp. 77-621(c)(4). The Board's dismissal of Riverport's appeal from the ALJ is vacated, and the case is remanded for further proceedings.

Vacated and remanded.

\* \* \*

POWELL, J., concurring:  I join the majority in the result but disagree with its conclusion that K.S.A. 2015 Supp. 44-551(l)(1) confers subject matter jurisdiction upon the ALJ to decide insurance coverage questions. It does not. K.S.A. 2015 Supp. 44-551(l)(1) grants broad investigatory powers to the ALJ concerning those matters properly before it, but it does not specify what those matters are. Subject matter jurisdiction in this case is conferred by K.S.A. 2015 Supp. 44-532a(a), which states:

> "If an employer has no insurance or has an insufficient self-insurance bond or letter of credit to secure the payment of compensation, as provided in subsection (b)(1) and (2) of K.S.A. 44-532, and amendments thereto, and such employer is financially unable to pay compensation to an injured worker as required by the workers compensation act, or such employer cannot be located and required to pay such compensation, the injured worker may apply to the director for an award of the compensation benefits, including medical compensation, to which such injured worker is

10

entitled, to be paid from the workers compensation fund. Whenever a worker files an application under this section, the matter shall be assigned to an administrative law judge for hearing. If the administrative law judge is satisfied as to the existence of the conditions prescribed by this section, the administrative law judge may make an award, or modify an existing award, and prescribe the payments to be made from the workers compensation fund as provided in K.S.A. 44-569, and amendments thereto. The award shall be certified to the commissioner of insurance, and upon receipt thereof, the commissioner of insurance shall cause payment to be made to the worker in accordance therewith."

In the present case, the parties stipulated that the employer was insolvent; therefore, under the statute quoted above, the ALJ had to be satisfied whether, in fact, the employer had insurance coverage. While K.S.A. 2015 Supp. 44-551(l)(1) confers upon the ALJ the necessary powers to investigate and gather evidence to aid it in answering this question, it is the statutory language of K.S.A. 2015 Supp. 44-532a(a) that grants the ALJ the power to answer the insurance coverage question.

11